| 69 | 65 |
| 44a | 633 |
| 69 | 65 |
| 50a | 471 |
| 69 | 65 |
| 151 | 183 |

</div>

THE ST. LOUIS RAILROAD COMPANY, *Appellant*, v. THE NORTH-
WESTERN ST. LOUIS RAILWAY COMPANY.

1. **Street Railroads in St. Louis**: PARALLEL LINES. The act of Jan-
uary 16th, 1860, (Sess. Acts 1859–60, p. 516,) after confirming the St.
Louis Railroad Company, the Peoples' Railway Company and the
Citizens' Railway Company in the enjoyment of the franchises
which they were then exercising, provided that "no street railroad
shall hereafter be constructed in the city of St. Louis nearer to a
parallel road than the third parallel street from any road now con-
structed or which may hereafter be constructed, except the roads
hereinbefore mentioned." In a suit by the St. Louis Railroad Com-
pany to enjoin another company from building its road upon a
street parallel to the one occupied by its line and next to it; *Held*,
that this act prohibited the construction of any parallel lines of
street railroads in the city of St. Louis within three blocks of each
other, but excepted the three companies named from the operation
of this prohibition so far as to permit them to construct their roads
within that distance of each other, but not of the roads of any other
companies; *Held, further*, that in determining what were parallel
roads within the meaning of the act, neither the relative location of
the termini nor the general direction of the entire line of the roads
could be regarded as controlling circumstances; nor was it neces-
sary that every part, or even the greater part, of the two roads
should be parallel; and it appearing that the general direction of
the two contending roads was substantially the same for nearly two
miles, and for half a mile of that distance they were exactly paral-
lel, it was held that they were to be deemed parallel roads, not-
withstanding that their termini were wide apart and the general
direction of one was from northwest to southeast, while that of the
other was from north to south.

2. **Injunction** will issue to prevent the invasion of a right secured by
statute without proof of damage.

5—69

*Appeal from St. Louis Court of Appeals.*

*Glover & Shepley* for appellant.

*Geo. A. Madill* with whom was *Thos. E. Ralston* for respondent.

HOUGH, J.—This was a suit brought by the plaintiff on the 21st day of July, 1874, to enjoin the defendant from constructing a street railway over that portion of Ninth street, in the city of St. Louis, lying between Hempstead street and North Spring street, on the ground that the construction and operation of a railroad thereon would be an encroachment upon and interference with the exclusive rights and privileges of the plaintiff. Ninth street, between the points named, is the street next adjacent to Broadway along which plaintiff's road has been constructed, and is parallel thereto.

The plaintiff was organized as a corporation in the year 1859, under the act of the General Assembly entitled "An act to authorize the formation of railroad associations and to regulate the same," approved December 13th, 1855, for the purpose of constructing, operating and maintaining a railroad for the conveyance of persons and property, to be worked by horse power only, from Bellefontaine cemetery to the southern boundary of the city of St. Louis. In the year 1859, the plaintiff was, by sundry ordinances, authorized to construct and operate its road from the northern limits of the city down the Bellefontaine road and Broadway to O'Fallon street, thence south along Fifth street with double track to such street between Market and Myrtle streets, as said company should select, and thence to the southern boundary line of the city, and in the years 1859 and 1860, completed, and has ever since maintained and operated the same as now located.

On January 16th, 1860, an act was passed by the General Assembly, the first section of which is as follows:

Section 1.    The St. Louis Railroad Company, the People's Railway Company and the Citizens' Railway Company, as heretofore organized under the act to authorize the formation of railroad associations, and to regulate the same, approved December 13th, 1855, are hereby ratified and confirmed in their respective rights under said law; and the roads now built or commenced, and the gauge of track established by said companies is sanctioned; and said gauge of four feet ten inches is hereby recognized as the legal gauge of all other street railroads that may be built in the city and county of St. Louis.    Said companies shall conform to and be governed by said law concerning railroad associations, except as follows:    1. Said companies shall not be required to carry freight.    2. The report made to the city comptroller shall be in lieu of the annual report required to be made to the Secretary of State, by the law under which said companies organized.    Section two prohibits the construction of street railroads on certain streets.

Section three is as follows:    Section 3.    No street railroad shall hereafter be constructed in the city of St. Louis nearer to a parallel road than the third parallel street from any road now constructed, or which may hereafter be constructed, except the roads hereinbefore mentioned; and in consideration of the privileges herein granted, the city of St. Louis is hereby expressly empowered to impose and levy such tax and license upon said roads now constructed or that may hereafter be constructed, as the common council of said city may determine to be just and proper; and the said city may make such municipal regulations concerning said street railroads as the public interests and convenience may require, except to reduce the rate of fare charged by said companies as now fixed by ordinance of the city of St. Louis.

On the 12th day of June, 1874, the Northwestern St. Louis Railway Company organized as a corporation under the general law concerning manufacturing and business

companies, and by ordinance dated June 30th, 1874, was authorized to construct its road from the corner of Sixth and Locust, west on Locust to Ninth street, north on Ninth street to North. Spring street, west along North Spring street to St. Louis avenue, and thence along St. Louis avenue to Jefferson avenue.

The only question of importance presented by the record is as to the proper construction of the following paragraph of section three of the act of 1860 : "No street railroad shall hereafter be constructed in the city of St. Louis nearer to a parallel road than the third parallel street from any road now constructed, or which may hereafter be constructed, except the roads hereinbefore mentioned." It was conceded at the argument that at the time of the passage of the act aforesaid, the Peoples' railway had not been constructed. The plaintiff's road was constructed in 1859 and 1860, and as the act in question was passed on the 16th day of January, 1860, it is quite probable that the plaintiff's road was not then entirely completed. The precise date of its completion is not given. The track of the St. Louis railroad ran along Fifth street for a long distance in the central portion of the city, and the track of the Peoples' railroad ran along Fourth street in the same portion of the city for a considerable distance, and then ran west on Chouteau avenue. Fourth street is the next parallel street to Fifth street.

In construing the paragraph above quoted the circuit court held that the plaintiff would be protected thereby 1. STREET RAIL-  from the encroachment threatened by the deROADS IN ST LOUIS:
parallel lines.      fendant, if the defendant's road could be considered as a parallel road ; but as the general direction of the plaintiff's road was from north to south, and that of defendant from northwest to southeast, with a distance of only half a mile over which the parallel track was to be laid, that portion of the road on Ninth street, the construction of which was sought to be enjoined, was not such an encroachment as the statute intended to forbid.

The court of appeals expressed no opinion as to whether the two roads were parallel within the meaning of the statute, but reached a conclusion directly the opposite of that arrived at by the circuit court as to the right of the plaintiff to be protected against the construction of parallel roads within three blocks of its road. That court held (2 Mo. Appeal Rep. 71) that the third section contemplated two classes of roads or companies; that the first class are forbidden to construct their roads within a certain distance from the roads comprehended in the second class; and that "those in the second class are to enjoy the exemption thus secured from proximate competition," and that the "roads hereinbefore mentioned," that is, the plaintiff, the Peoples' Railway Company and the Citizens' Railway Company were excepted from the second class, and are consequently the only roads which were made subject to proximate competition. All other roads were to be exempt from it, and the plaintiff, therefore, instead of being entitled to the exclusive privilege claimed, was expressly denied it by the very words of the statute.

We cannot concur in this construction of the statute. Nor do we believe that it was the purpose of the act to confer upon the companies named therein the right to thereafter construct their roads within three blocks of other parallel roads. The section contains a general prohibition against the construction of parallel roads within certain designated distances of each other, but, as the tracks of two of the roads named, one of which certainly had not been constructed, were within such proximity as was prohibited by the act, and as by a previous section of the same act they were confirmed in the rights and privileges granted them by the city, it became necessary and proper to except them from the general prohibition, and this, we think, was the whole purpose of the exception. Such of the roads named in the act as were parallel to each other were confirmed in the privileges granted them before the passage of the act and were permitted to be constructed within three blocks

of each other, but these companies were not authorized to build their roads within three blocks of other parallel roads, nor were such other roads to be constructed within three blocks of them. The exception is to be strictly confined to the roads named in the act, and the proximity of the roads named doubtless suggested the propriety of the prohibition. The substance and sense of the section is that no parallel lines of railroad shall be constructed within three blocks of each other, except the roads mentioned in the act.

If this construction be correct, it necessarily follows that the Peoples' road and the plaintiff's road are parallel roads within the meaning of the third section, inasmuch as they are excepted from the prohibition contained in the act because of their parallelism; and they are so parallel, notwithstanding the fact that a portion of the Peoples' line runs at right angles with the plaintiff's line, and the further fact that their general direction is not the same. And these facts furnish us a safe guide to the true meaning of the words "parallel road" employed in the third section. They certainly demonstrate that the relative location of the termini of the plaintiff's and defendant's roads can by no means be regarded as a controlling circumstance in determining whether such roads are parallel roads within the meaning of the act, and this may be shown also by illustration. Suppose, for instance, the plaintiff's road runs due north and south along the eastern boundary of the city, and that defendant's road should begin at the northwest corner of the city and run due east to the plaintiff's road, and then due south on the street next adjacent to the one occupied by the plaintiff's road until it reached the southern limits of the city, and should then run due west and at right angles with the plaintiff's road to the southwest corner of the city limits, although the termini of the respective roads would be miles apart, could it be contended in such case that there was no invasion or impairment of the qualified exemption from competition bestowed upon

the plaintiff? The case put clearly shows that neither the location of the termini nor the general direction of the entire line of the road can be taken as a true test of the prohibited parallelism of the two roads. To constitute such parallelism it is not necessary that every portion of the defendant's road should be parallel with the plaintiff's road; nor is it necessary that the greater portion thereof should be so parallel, for that would be to make the solution of the question depend, not upon the extent to which the roads are in fact parallel, but upon the length of those portions of the road which are not parallel. It appears from the map in evidence, that the general direction of the plaintiff's and defendant's roads is substantially the same, for the distance of nearly two miles, and for one-half a mile of that distance they are exactly parallel, and within one block of each other. Roads so constructed are, we think, substantially parallel roads within the meaning of the third section, and the infringement is a substantial infringement. Unless this be so, the qualified exemption from competition is a mere delusion, means nothing and confers no substantial benefit.

It is further objected that the plaintiff failed to show by proof that any injury would result to it by the building 2. INJUNCTION. of the defendant's road on Ninth street between Hempstead and Spring streets, or that such injury, if any should be sustained, could not be compensated in damages. On this subject, we cannot do better than to quote the language of Lowrie, J., in the case of the *Commonwealth v. Pittsburgh & Connellsville R. R. Co.*, 24 Pa. St. 160: " The argument that there is no ' irreparable damage' would not be so often used by wrong-doers if they would take the trouble to observe that the word ' irreparable' is a very unhappily chosen one, used in expressing the rule that an injunction may issue to prevent wrongs of a repeated and continuing character, or which occasion damages which are estimable only by conjecture and not by any accurate standard. 3 Railway C. 106, 345; 4 Id. 186; 1 Sim. & S.

607; 3 Atk. 21; 6 Johns. Chy. 501; 16 Pick. 525; 3 Wharton 513.   As this argument is generally presented, it seems to be supposed that injunctions can apply only to very great injuries; and it would follow that he who has not much property to be injured, cannot have this protection for the little he has.   Besides this, where the right invaded is secured by statute or by contract, there is generally no question of the amount of damage, but simply of the right."

The judgment of the court of appeals, and that of the circuit court are reversed and the cause is remanded to the circuit court with directions to enter a decree as prayed by the plaintiff.   All concur.

REVERSED.