Calvert v. Bates.

HENRY CALVERT *et al.*, Defendants in Error, v. G. R.
BATES *et al.*, Plaintiffs in Error.

**Kansas City Court of Appeals, April 27, 1891.**

1. **Public Schools:** DIVISION OF DISTRICT: INJUNCTION: DAMAGES:
MULTIPLICITY OF SUITS. The statute provides that, upon the
receipt of a petition signed by ten qualified voters residing in the
district who desire to divide the district, it is the district clerk's
duty to post a notice of such desired change in at least five public
places, etc., and at the annual meeting the voters shall decide as
to such change by a majority vote, provided no new district
should be created, or boundary line should be changed, so as to
leave a district containing within its limits less than thirty pupils,
or property of less than $30,000 assessed valuation, etc.; and it is
*held* that the district clerk and petitioners will be enjoined from
posting notice and presenting such petition to the annual meeting,
when it is the design of the petitioners to cut off from the district
a portion thereof containing less than the required number of
pupils and less than the required amount of property, and also to
disfranchise the voters so cut off so as to effect the removal of the
schoolhouse from the center of the district; and that the accom-
plishment of such scheme would result in such injuries that an
adequate remedy could not be offered by damages, which, in such
case, would be estimable by conjecture and not by an accurate
standard: and it would also result in a multiplicity of suits.

2. **Appellate Practice:** ABSTRACT OF EVIDENCE: STATEMENT: PRE-
SUMPTION. The appellate court cannot review the finding of the
trial court where no abstract of the evidence is presented, and a
statement of what the evidence seems to prove is not sufficient.
The appellate court must indulge every presumption in favor of
the finding of the trial court.

*Error to the Adair Circuit Court.*—HON. ANDREW
ELLISON, Judge.

AFFIRMED.

*Harrington & McCall,* for plaintiffs in error.

(1) The court should have sustained the demur-
rer. The defendants were only charged with circulating

Calvert v. Bates.

a petition to be presented to the district clerk, asking him to give the notice required by law that a proposition would be submitted to be voted on at the annual school meeting to divide the district by cutting off the strip as charged in the petition. They were only petitioners in this instance, and their right to petition cannot be disputed. See Bill of Rights, Const., sec. 29. The petition does not state facts sufficient to constitute a cause of action against defendants, as they were not necessary parties to the action; if anyone should have been enjoined, it was the district clerk, and not the petitioners. And again: Injunction will not lie to restrain a party from doing a thing which he could not do, or which would have been a nullity when it was done. *Sagree v. Tompkins*, 23 Mo. 443; *State v. Railroad*, 32 Mo. 496. Again: Injunction will not lie where a party can obtain adequate satisfaction in the ordinary course of law. *Burgess v. Kattleman*, 41 Mo. 480; *Anderson v. City of St. Louis*, 47 Mo. 479; *Hopkins v. Lovell*, 47 Mo. 102; *Steins v. Franklin Co.*, 48 Mo. 167. Here the plaintiffs had a complete remedy at law. *Dickhaus v. Olderheide*, 22 Mo. App. 76. (2) This proceeding could work no substantial injury to the complainants. *First.* Because the proceeding was a nullity. *Second.* Because the complainants did not reside in the territory to be voted out. If the proceeding had been legal, they would have still been householders of the district. Injunction will not lie where the injury complained of will not work irreparable mischief. *Damschroeder v. Thias*, 51 Mo. 100. This proceeding could work no irreparable mischief, for plaintiffs would still have their remedy at law, and would have complete redress for all grievances or wrongs they might suffer because of this proceeding. *Third.* But finally the court should have found for all of the defendants as well as a part of them on the evidence.

*B. R. Dysart*, for defendants in error.

(1) The printed abstract contains only a copy of the petition, it fails to set forth the testimony in the case, as well as the finding and judgment of the court; nor is it shown against which of the defendants the circuit court decided. *Goodson v. Railroad*, 23 Mo. App. 76; *Nichols v. Nichols*, 39 Mo. App. 291; *Shaw & Co. v. Bryan*, 39 Mo. App. 523; *Bensberg v. Turk*, 40 Mo. App. 227, 421, 448. (2) The point made against the sufficiency of the petition is not well taken. The petition states a good cause of action. It shows that the defendants were engaged in, proceeding and threatening to commit a legal wrong, and under the forms of law accomplish that which they had no right whatever to do. The petition further alleges and shows that the defendants were acting in collusion, and were in a conspiracy to accomplish under the forms of law an illegal act to the peril of the rights of the plaintiffs, for which they could have no adequate remedy at law. R. S. 1889, p. 1315, sec. 5510; p. 1313, sec. 5491; *Bank v. Kercheval*, 65 Mo. 682 688; *Railroad v. Railroad*, 69 Mo. 65–71; *Denison v. The City of Kansas*, 95 Mo. 416 429.

SMITH, P. J.—The petition alleges that the plaintiffs were legal voters and taxpaying citizens in school district number 5, township 61, and range 14, in Adair county; that said district contained seven and a half square miles; that the defendants, eleven in number, in March, 1888, signed a petition addressed to the clerk of said school district, praying him to give notice that at the next annual meeting a proposition would be submitted to change the boundary lines of said district so as to cut off a strip on the south side of said district, a half mile wide by two and a half miles long; that said strip did not lay alongside of any other school district in Adair county, and that said proposed change would

wholly deprive the strip of school privileges in said county and leave it without an assessed valuation of $30,000, and without thirty pupils of school age therein. It was further alleged that the real purpose of the defendants was not to change the said boundary line for the benefit of the whole district, but for the purpose of disfranchising those living in said strip until the defendants could vote to change the site of the schoolhouse of said district from where the geographical center of said district then was, to a point so far distant from plaintiffs that their school privileges would be not only greatly injured, but destroyed.

It was further alleged that the proposition to change said boundary line was a pretense upon the part of the defendants and a cover, behind which, under the forms of the law, they proposed to disfranchise those living on said strip, so that they could then select a site and build a schoolhouse thereon, remote from the center of the district and from the plaintiffs and those living on the said strip; that when they again attached themselves to said district they will be wholly precluded from enjoying any of the benefits of the school therein. It was further alleged that the defendants were in collusion with each other and that, if they accomplished their purpose, plaintiffs would be greatly oppressed and defrauded. It was further alleged that the said strip was bounded on the south side by the county of Macon, and that there was no authority to attach said strip to any organized school district adjoining it in Macon county. It was further alleged that defendants were threatening to carry out all the charges made against them in the petition, and the proposition in their petition to the clerk of said school district, unless restrained; that plaintiffs, and those for whom they prosecuted the action, would not have any adequate remedy at law for damages for the wrongs and injuries threatened by defendants. There was a prayer for the injunctive process of the court, etc.

The defendants demurred to the petition on the ground that it did not state facts which entitled the plaintiffs to the relief they prayed for. The demurrer being overruled the defendants filed an answer putting in issue the allegations of the petition. There was a trial which resulted in a finding and decree for plaintiffs.

I.    The defendants demand, as they have a right to do, a re-examination by us of the grounds of their demurrer to the plaintiffs' petition. We must, therefore, consider the question whether the facts stated in the petition are such as entitle the plaintiffs to the relief prayed for. The school statutes provide that, upon the receipt by the district clerk of a petition signed by ten qualified voters residing in any district who desire that the district be divided, it shall be his duty to post a notice of such desired change in at least five public places in the district interested, fifteen days prior to the annual meeting, and the voters, when assembled, shall decide such question by a majority vote upon such proposition. If the assent to such change be given by the annual meeting of the parts of the district to be divided, each part voting separately, the boundary lines thus changed shall be deemed changed from that date, provided that no new district shall be created, or boundary line shall be changed, by which any district shall be formed or left containing within its limits, by actual count, less than thirty pupils of school age, or left with less than $30,000 assessed valuation, unless such district shall contain within its limits nine square miles or more of territory. Laws of 1887, pp. 259-60. It is quite apparent, therefore, that the defendants by their petition were seeking to have the district clerk to submit to the qualified voters, at the annual meeting, a proposition to change the boundary lines of the district and thus to divide it in a way that the statute expressly prohibits. The defendants had no right to petition for the change of the district in conformity to their desire therein expressed, nor had the clerk any

authority to receive such petition or give notice of what is proposed. Nor had the legal voters at the annual meeting any power to entertain or vote upon the proposed change which was petitioned for by defendants. The defendants were endeavoring to do that which the law said they should not do. It would have been just as lawful for the defendants to have petitioned the clerk to submit a proposition at the annual meeting of the legal voters to deprive the children, of proper school age, in any part of the district, of the benefits of the free public school in the district, or to burn the schoolhouse, as was the change of the district which the defendants desired, and sought to have accomplished under the forms of procedure provided by the school law.

It is not doubted that a court of equity in such case, if the exercise of its jurisdiction was properly invoked, would promply interfere by its injunctive process. The petition charges collusion, or which is the same thing, a secret agreement and co-operation of defendants among themselves for a fraudulent purpose. It charges that the defendants, by their petition, put on foot a fraudulent scheme which they were endeavoring to have accomplished, to disfranchise a part of the legal voters of the school district, for the purpose of enabling defendants to succeed in changing the site of the district schoolhouse to a point to suit their own selfish ends, remote from the geographical center of the district, greatly to the inconvenience of both the plaintiffs and the legal voters residing in the part thereof to be detached. The facts outlined by the petition show an artful plan, on the part of the defendants, to secure an unlawful and unfair advantage over the plaintiffs and the persons residing on the strip to be detached, having children of proper school age, in respect to the removal and location of the district schoolhouse. The forms of the law must not be prostituted to any base purpose. It is perhaps true that, if the unlawful scheme, contemplated by the defendants, had received

the approval of the legal voters, at the annual meeting, that it would not, in the end, have worked out the result intended by the defendants, still it would probably have led to a multiplicity of actions at law for the redress of the grievances of the persons injuriously affected by it, and, besides, it would have in other respects caused the. plaintiffs, and others similarly situated, much annoyance and inconvenience.

The plaintiffs, we think, show a sufficient title to the relief they pray.

To say that their rights, as resident taxpayers of the district, were not encroached upon by reason of the conduct of the defendants, is absurd. Have they no right to challenge any scheme to unlawfully change the site of their district schoolhouse ? Would no rights of theirs be infringed by the unlawful detachment from their district, of the territory proposed ?

Would not the taxable resources of the district, for school purposes, be thereby greatly reduced ? Might it not result in the increase of the burdens of taxation on plaintiffs for the support of their district school, or might it not result in making it necessary to curtail the length of time for the keeping open their district school in consequence of its reduced income? The title of the plaintiffs to the relief they seek is too plain to be made the subject of lengthened argument; certainly this is a case where there is a legal wrong threatened, for which an adequate remedy cannot be afforded by damages. The damages in such case would be estimable by conjecture and not by any accurate standard. If the defendants had succeeded in inflicting the injuries threatened by them, it would have been legally impossible for any court of law to lay down a rule for the admeasurement of the damages sustained by plaintiffs, that would have compensated them for the injury inflicted. But whether this is so or not, the statute concerning injunctions, section 2722, Revised Statutes, 1879, as interpreted by the supreme court of this state, in cases of this kind, entitled

the plaintiffs to the remedy of injunction to prevent the threatened invasion of their rights by the defendants. *Savings Bank v. Kercheval*, 65 Mo. 682; *Railroad v. Railroad*, 69 Mo. 65; *Denison v. City of Kansas*, 95 Mo. 416.

Besides, it is apparent that, if the defendants had been left to carry out their threatened and illegal scheme, it would have occasioned a multiplicity of suits to recover damages. In such case equity will interpose, by injunction, to prevent such consequences. High on Injunctions, sec. 701; *Damschroeder v. Thias*, 51 Mo. 100; *Johnson v. City of Rochester*, 13 Hun, 285. We think the petition stated facts entitling the plaintiffs to the relief for which they prayed.

II. We are further asked to review the finding of the court upon the evidence. This we cannot do. The defendants have presented no abstract whatever of the evidence. It is neither set out *hæc verba*, nor at all. The defendants have. contented themselves with a brief statement of what, it seems to them, the evidence proves; but, in the absence of a presentation of the evidence itself, how can we tell whether their conclusions in that regard are well founded or not? We have so frequently called the attention of counsel to the necessity and importance of observing the requirements of rule 15, in cases of this kind, that there is now no excuse for a failure to do so. *Nichols v. Nichols*, 29 Mo. App. 291; *Bank v. Davidson*, 40 Mo. App. 421; *Holton v. Mining Co.*, 40 Mo. 448; *Shaw v. Bryan*, 39 Mo. App. 523; *Goodson v. Railroad*, 23 Mo. App. 76.

We must indulge every presumption in favor of the correctness of the finding of the circuit court in this case, on the evidence.

The decree of the circuit court is affirmed. All concur