ALBERT W. SWAYNE, Executor, Appellee, v. BOARD OF SUPERVISORS OF POLK COUNTY et al., Appellants.

**HIGHWAYS:** Improvement of Primary Road—Intercounty District. A highway one end of which abuts upon a county boundary line does not "substantially parallel" said boundary line, within the meaning of Sec. 4734, Code, 1924, when four fifths of said highway, out of an entire length of five miles, lie at right angles to said boundary line. It follows that the creation of an intercounty paving district for the paving of such highway is unauthorized, and an assessment levied thereunder is void.

*Appeal from Polk District Court.*—JAMES C. HUME, Judge.

JUNE 24, 1924.

ACTION in equity, praying the cancellation of a special assessment for the improvement of a public highway by paving, and to enjoin the collection of such assessment. Demurrers to plaintiff's petition were overruled, and certain of the defendants, who elected to stand upon their demurrer and to refuse to

plead further, appeal from the decree, which granted the full relief asked.—*Affirmed*.

*George F. Henry, Ben J. Gibson*, Attorney-general, *Herbert A. Huff*, Assistant Attorney-general, and *Parrish, Cohen, Guthrie & Watters*, for appellants.

*W. M. Wilson* and *Joseph C. Picken*, for appellees.

STEVENS, J.—Plaintiff, appellee in this court, is the owner of the north 51 acres of the south half and the west 38 acres of the northwest quarter of the northwest quarter of Section 5, Township 77, Range 23, Warren County. The defendants are respectively the boards of supervisors and county auditors of Polk and Warren Counties, the county treasurer of Warren County, the state highway commission, and the Wright Construction Company. General equitable demurrers were interposed to appellee's petition and overruled by the court. The defendants electing to stand thereon and refusing to plead further, decree was entered against them, as prayed. The board of supervisors and the county auditor of Polk County, the state highway commission, and the Wright Construction Company appeal.

Many grounds are alleged in the petition for the relief prayed; but, as the decree below must be affirmed, we shall consider but one of them. The material facts alleged in the petition and admitted by the demurrers are that, at a special election held for that purpose, the electors of Polk County voted to pave the roads of the primary road system; that, by appropriate resolution and approval of the state highway commission, the following section or division of the primary road system of said county was ordered paved, to wit: from the city of Des Moines south to the Warren County line. The district designated and established by the board of supervisors for this improvement is denominated the Des Moines-Carlisle Road District No. 8. The exact course and direction of the highway, commencing at the north terminus, is as follows: south three fourths of a mile, thence east one fourth, thence south two and three-fourths miles,

thence east three quarters of a mile; thence south one-half mile to the south line of Polk County. The length of the improvement is exactly five miles. By a written agreement entered into between the boards of supervisors of Polk and Warren Counties respectively, all of Section 5 and other lands in Warren County are included in the boundaries of the district, and were assessed for what was deemed an equitable portion of the cost of the improvement. The 38-acre tract of appellee abuts upon the highway between Polk and Warren Counties.

The only allegation of irregularity in the proceedings for the improvement of the highway is that the agreement of the two boards was not the result of a joint action between them. The validity and constitutionality of several provisions of Chapter 237, Acts of the Thirty-eighth General Assembly, under which the proceedings were had, are challenged by appellee. In view of our conclusion that, as the highway improved does not lie substantially parallel with the southern boundary of Polk County, the lands of appellee were not legally included in the district or assessed for the improvement thereof, we shall not consider the constitutional or other questions argued by counsel.

Section 3 of Chapter 237, Acts of the Thirty-eighth General Assembly (Section 2911, Compiled Code, 1919), provides that the highways of this state, for the purposes of said chapter (which was, as to certain roads, amended by Chapter 83, Acts of the Fortieth General Assembly [Section 2911, Supplement to the Compiled Code, 1921]), are "divided into two systems, to wit: the primary road system and the secondary road system." The legislature further designated what roads should be embraced in the primary road system and what roads should constitute the secondary road system, as follows:

"The primary road system shall embrace those main market roads (not including roads within cities), which connect all county seat towns and cities and main market centers, and which have already been designated under Section 2 of Chapter 249 of the Laws of the Thirty-seventh General Assembly of the state of Iowa, accepting the provisions of the Act of Congress approved July 11, 1916, known as the Federal Aid Road Act; * * * The state highway commission may, for the purpose of

affording access to cities, towns, villages, state parks, and recreation centers within a county, add such road or roads to the primary system of said county as the board of supervisors may specifically designate and request. The secondary road system shall embrace all roads not embraced in the primary system and not embraced within the limits of cities or towns. Roads embraced in the secondary road system shall continue to be classed as at present, as county roads or township roads as the case may be.''

Section 7 of Chapter 237, Acts of the Thirty-eighth General Assembly (Section 2915, Compiled Code, 1919), provides:

''For the purpose of creating a basis for a systematic program of improvement, the board of supervisors of each county, in conjunction with the county engineer, shall, as soon as may be reasonably possible after the taking effect of this chapter, divide into divisions the roads of the primary road system within their county, with a view to the most advantageous program of improvement, having in view the development of the primary roads in the county in such order as will best and most fairly meet the convenience of the public, viewing the county as a whole. Different portions of primary roads which diverge from a common point may be so divided into divisions that the several divisions immediately adjacent to the common point will constitute an appropriate district. Said divisions shall be suitably designated on a map filed with the state highway commission, and shall be recorded by the county auditor in the proceedings of the board, and shall be final, except that the board may, under changed or better understood conditions, modify such record in order to attain more advantageous results in cost. No division established by the board of supervisors shall embrace roads or streets within a city.''

The succeeding section, Section 8 (Section 2916, Compiled Code), requires the board of supervisors of the county in which the improvement of any division of the primary road system has been decided upon, ''on or before the first day of August of any year, by a resolution filed with the state highway commission, [to] specify the division or divisions of the primary road system in said county which they desire to improve here-

under. * * * Each district shall be clearly designated by some appropriate and distinctive name and number, such, for in- stance, as 'Correctionville Road, District No. 1.' * * * All real estate lying upon and immediately adjacent to each side of the highway, and constituting two continuous zones each 320 rods in width, measured from the center of the highway, shall be included within each district. The board of supervisors may increase the width of either of said zones by extending the outer boundary thereof for a distance of not to exceed 160 rods."

"Each assessment district shall be considered a unit and all funds received by the county treasurer for and on behalf of the hard surfacing of such unit shall be carried as a distinct and separate account and under the same specific name as that used by the board in establishing such unit." Section 22, Chap- ter 237, Acts of the Thirty-eighth General Assembly (Section 2930, Compiled Code).

The designation of the portion of the primary road system of Polk County in question as a division for the purpose of its improvement by paving, and the establishment of a district with continuous zones on each side, so far as the same includes only land in Polk County, appear to have been regular and in all respects in conformity to the highway statutes. It is clear that it does not answer the description of either the second or the third class defined by Section 36, Chapter 237, Acts of the Thirty-eighth General Assembly, with reference to the inclusion of lands in another county in the district. It is not a highway constituting a boundary line between different counties, nor does it approach a county boundary line at such an angle that the hard surfacing thereof will reasonably necessitate a district with a substantial part thereof in different counties. Does it sub- stantially parallel the south boundary line of Polk County? Unless it does, then it must be conceded that the agreement be- tween the board of supervisors of Polk County and the board of supervisors of Warren County for the inclusion of appellee's land in the district, together with the assessment later laid thereon, is void, and the collection thereof should be perma- nently enjoined. The only part of the highway paved which parallels the south boundary of Polk County is three fourths

of a mile, which lies one-half mile north thereof. If we treat the highway in question as a primary road, rather than a division of the primary road system of Polk County, it would seem to be too clear for argument that it does not, as a unit, substantially parallel a county boundary. The same is true if it is treated as a division of the primary road system, so designated for convenience of improvement. There is nothing in the language of the statute which contemplates the division of a primary highway or a portion thereof designated as a division for the purpose of improvement, into subdivisions for the purpose of determining the possible boundary lines of a district.

It is the highway, or division thereof, as a substantial unit which must determine whether it "substantially parallels" a county boundary. The term "substantially parallel" is, no doubt, subject to considerable flexibility of construction; but to so interpret it as to define a highway five miles in length, all but three fourths of a mile of which lies at right angles to the county boundary, as "substantially parallel" thereto, would be to pervert, and not interpret, the statute. Such was not the intention of the legislature. This interpretation of the statute is confirmed by the portions of Section 8 quoted supra. The real estate subject to assessment for the paving of a primary highway, or a division of the primary road system, is such as lies immediately adjacent to each side of the highway and forms a part of a continuous zone 320 rods in width, measured from the center of the highway, or such as may be added thereto by the board under the restrictions of the statute. A highway lying substantially parallel to a county boundary within the distance limited therefrom would permit of the establishment of zones on each side thereof so as to include land in another county than that in which the improvement is located. The statute contemplates the assessment only of lands within one of the zones on each side of the highway. No portion of the land of appellee is so situated. The northeast corner of the 38-acre tract which is nearest the highway improved is one-half mile west and a half mile south therefrom. It does not lie on either side of the highway, even for the short distance that it parallels the county boundary, unless diverging lines drawn at right

angles to the slight curve at the point where the road turns east, which curve is for the obvious purpose of avoiding a sharp corner, assign it that location.

The clear contemplation and intention of the legislature were to designate the land lying in the continuous zone on each side of a highway within a prescribed distance from the center thereof, as the land subject to assessment for the cost of paving such highway. The primary road in question does not substantially parallel the county boundary, and therefore the assessment is wholly void, and the collection thereof was properly enjoined. *St. Louis R. Co. v. Northwestern St. L. R. Co.*, 69 Mo. 65, and *Fruin-Bambrick Const. Co. v. St. Louis Shovel Co.*, 211 Mo. 524 (111 S. W. 86), cited by appellant upon the question of what constitutes a parallel road, are not persuasive. They are in point only in so far as they hold that the question whether one highway parallels another does not depend upon its termini. The statute under construction in the *Fruin-Bambrick Const. Co.* case was wholly unlike the statute in question, and the essence of the controversy was the matter of competition between railways.

*Postal Tel. Cable Co. v. Norfolk & W. R. Co.*, 88 Va. 920 (14 S. E. 803), cited by appellee, is in point in so far as it defines the word "parallel." The lexicographer's definition of this word, however, is not the one that must prevail in the construction of the statute in question. The statute must be construed in its relation to the whole chapter, and given such effect as will carry out the intention of the legislature. No substantial part of the road in question lies parallel to the county boundary, but, on the contrary, at least four fifths of it lies at right angles thereto. It does not come within the definition of a highway which "substantially parallels a county boundary line and is not more than one mile from such boundary line."

We refrain from discussing the other propositions argued by counsel. The decree of the court below is—*Affirmed.*

All the justices concur.