PRIOR, Appellant, v. BUEHLER & COONEY CONSTRUCTION COMPANY et al.

In Banc, December 10, 1902.

1. **Sewers: CONSTITUTIONALITY OF CHARTER PROVISIONS.** The constitutionality of charter provisions providing for the construction of sewers and charging the cost proportionately upon all property abutting the improvement or within the established benefit district, either according to the area rule or of the front-foot rule, is no longer open to debate.

2. ——: **CHARTER AMENDMENTS.** The people of St. Louis had the power to so amend their charter as to provide for public, district, joint district and private sewers, instead of public and district sewers only as formerly. They also had the power to require that any or all sewers of whatever kind should be paid for out of the public revenues or by special assessments against the property benefited thereby.

3. **Joint District Sewer: ORDINANCE.** A sewer created by an ordinance uniting more than one district and providing a main outlet or intercepting sewer for the joint benefit of such districts, to be paid for by special taxes assessed upon all property in a joint sewer district, is a joint district sewer, within the meaning of charter provisions which define a joint district sewer to be a sewer constructed or acquired under the authority of ordinances, uniting one or more

districts or unorganized territory, for the purpose of providing main outlet or intersecting sewers for the joint benefit of such districts or territory, to be paid for by special taxes assessed against all property in said joint sewer district. And such sewer is none the less a joint district sewer because the purpose of its construction is to supplement an inadequate sewer which under the old charter was a public sewer constructed out of public revenues.

4. ————: DIRECT BENEFIT. The district sewers bring down from plaintiff's lots located on high ground, sewage, decaying animal and vegetable matter and refuse, and in times of freshets the existing sewers are not sufficient to carry off the sewage that crowds into them and hence it overflows and spreads out over the streets and pavements and into the cellars of houses located on lower ground, and this adtional servitude of filth, discomfort and disease is cast on these servient estates by plaintiff's dominant estate. *Held*, that plaintiff's property is sufficiently benefited to justify a tax assessed against his lots for the construction of an outlet sewer for these district sewers.

5. ————: ————: LEGISLATIVE QUESTION. The question of whether or not the owner's lots within a sewer district will be benefited by the construction of a sewer, is a legislative question, and.is determined in the affirmative by the municipal assembly when it establishes the sewer district and fixes the rate of benefits.

## Appeal from St. Louis City Circuit Court.—*Hon. S. P. Spencer,* Judge.

AFFIRMED.

*Daniel Dillon* for appellant.

(1) The provisions of the amendment of the charter of the city of St. Louis and of the ordinance of that city, in so far as they authorize and direct the cost of the construction of this proposed sewer to be assessed against the lots in this joint sewer district, in the proportion that the area of each lot bears to the area of the whole district are in violation of the Constitution of this State and the Constitution of the United States. Heman v. Allen, 156 Mo. 534; Heman v. Schulte, 166 Mo. 409; French v. Barber Asphalt Co., 181 U. S. 338, especially the dissenting opinion of Justices Harlan, White and McKenna, pp. 346 to 370. (2) The evi-

dence at the trial showed conclusively that plaintiff's lots could not be benefited in any way by this proposed sewer; that these lots already had ample sewer connection; that they were on high ground and distant four or five blocks from some low ground which is at times affected by overflows during very heavy rains. To sustain these threatened taxbills against plaintiff's lots for the building of this proposed sewer, will be to tax plaintiff's property, which stands on high ground, for the benefit of the owners of the lots lying in the low ground. (3) The petition in this case alleges that the proposed sewer is a public sewer and should be paid for out of the general revenue of the city. The evidence on the trial fully sustained this allegation.

*Chas. W. Bates, Wm. F. Woerner* and *Becker & Donovan* for respondents; *R. E. Collins* of counsel.

(1) The charter of the city of St. Louis has all the force and effect of an act of the General Assembly. St. Louis v. Fisher, 167 Mo. 660. (2) The same favorable presumptions are indulged in respecting the validity of ordinances which deal with subjects committed to the judgment of the municipal assembly as are indulged in respecting legislative action. St. Louis v. Fisher, 167 Mo. 663. (3) The judgment unimpeached for fraud or oppression of the municipal assembly is conclusive in all matters which are committed to its discretion by the charter. Heman v. Allen, 156 Mo. 547; St. Louis v. Weitzel, 130 Mo. 617; Heman v. Schulte, 166 Mo. 409; St. Joseph to use v. Farrell, 106 Mo. 443. (4) Special assessments for local improvements are referable to the taxing power solely, and the establishment of taxing districts for local improvements is a legislative question. The determination by the legislative power of what property is benefited and what portion thereof shall bear its proportion of the cost of local improvements is conclusive, at least, in so far as respects property which, from its situation, may be benefited by such improvement. Heman v.

Allen, 156 Mo. 546 (affirmed as Shumate v. Allen, 181 U. S. 402); Heman v. Schulte, 166 Mo. 419; French v. Barber Asphalt Paving Co., 181 U. S. 324 (same case as Barber Asphalt Paving Co. v. French, 158 Mo. 534); Hill v. Swingley, 159 Mo. 534. (5) Charging upon property in a taxing district the cost of local improvements in proportion to area is a valid exercise of the taxing power. Johnson v. Duer, 115 Mo. 376; St. Joseph ex rel. v. Farrell, 106 Mo. 442; Heman v. Schulte, 166 Mo. 409; French v. Barber Asphalt Paving Co., 181 U. S. 324. (6) The matter of establishing taxing districts for local improvements and of levying special assessments to pay therefor may be entrusted to the municipal assembly of the city. Heman v. Allen, 156 Mo. 546; Heman v. Schulte, 166 Mo. 416; Johnson v. Duer, 115 Mo. 376.

MARSHALL, J.—This is a bill in equity to restrain the construction of the Arsenal Street Joint District Sewer in the city of St. Louis, on the grounds, *inter alia*, that to tax the plaintiff's property for the benefits received by it from the sewer, would violate article 14 of the Constitution of the United States, and sections 21 and 30 of article 2, and sections 3 and 4 of article 10, of the Constitution of Missouri. The circuit court entered judgment for the defendants, and the plaintiff appealed.

In condensed form the controversy is this: Formerly the charter of St. Louis provided for: (1) public sewers, to be constructed "along the principal course of drainage," and to be paid for out of the general revenue of the city; (2) district sewers, to "be established within the limits of districts, to be prescribed by ordinance as approved by the board of public improvements, and so as to connect with a public sewer or some natural course of drainage," and to be paid for by special assessments against all lots of ground in the sewer district in the proportion that the area of such lots bore to the total area of the district; and (3) private sewers, connecting with public or district sew-

ers, and to be constructed by private persons, and paid
for by them.

In October, 1901, the people of St. Louis, under the
authority conferred upon them by the Constitution of
the State, amended the charter so as to abolish the
charter provisions relating to sewers above referred
to, and substituted therefor the following provisions
relating to sewers:

"Sec. 20, art. 6.   A sewer system is hereby estab-
lished, which shall be divided into four classes, viz.:
'Public,' 'District,' 'Joint District' and 'Private' sew-
ers; the classes in any case being determined by the
authority of its construction, and the definitions here-
inafter specified, irrespective of the area drained, the
size, character or purpose of the sewer.

"Public sewers are defined to be those heretofore
constructed or acquired under authority of an ordi-
nance and paid for wholly out of the general revenue.
Public sewers hereafter constructed shall be such sew-
ers as the board of public improvements may deem
it expedient to establish and construct without creating a
sewer district or joint sewer district; and such sewers
may be established and constructed at such times, to such
extent, of such dimensions and materials and under
such regulations as may be provided by ordinance,
recommended by the board of public improvements,
and shall also consist of such branches to sewers al-
ready constructed as may be considered expedient by
said board; provided, however, that no sewer shall be
run diagonally through private property when it is
practicable to construct the same parallel with the lines
of such property, nor shall any public sewer be con-
structed through private property when it is practic-
able to construct the same along a street, alley or public
highway.   An appropriation shall be made to meet the
cost of each public sewer from the public revenue.
Public sewers may be connected with any other sewer
of any class, or with some natural course of drainage.

"District sewers are defined to be those constructed
or acquired under authority of ordinances, within the

limits of an established sewer district, and paid for by special tax assessed upon the property in the district.

"Joint district sewers are defined to be those constructed or acquired under the authority of ordinances uniting one or more districts or unorganized territory for the purpose of providing main outlet or intercepting sewers, for the joint benefit of such district or territory, and paid for by special taxes assessed upon all the property in said joint sewer district.

"Private sewers are defined to be these built with or without permits, and paid for by the parties, persons, associations or corporations constructing the same."

"Sec. 22, art. 6.    Joint District sewers may be constructed or acquired as follows: Whenever the municipal assembly, on the recommendation of the board of public improvements, deems it necessary that a sewer be constructed in any part of the city, for the drainage or sanitary improvement of a section of the city comprising more than one established sewer district, or territory, not yet in an established sewer district, it may, by ordinance, unite and establish such sewer districts, or parts thereof, and unorganized territory, into a joint sewer district, and cause a sewer or sewers to be constructed therein, and the whole cost thereof to be asesssed against all the property within the boundaries of such joint sewer district as a special tax; but if the joint district sewer is to drain territory part of which lies outside of the city limits, and can not be included in the joint-sewer district, then the municipal assembly shall provide in the ordinance or ordinances authorizing the construction of the joint district sewer or sewers, that a part of the cost of such sewer or sewers, in the proportion that the area of the unincluded territory bears to the whole area drained, shall be paid out of the general revenue, in which case the remainder of the cost shall be assessed as hereinafter provided.

"The total cost of joint district sewers shall be

levied and assessed upon all the property in the joint
sewer district as follows: Whenever the whole or a
section of a joint district sewer is fully completed, the
sewer commissioner shall cause the total cost thereof
to be computed, and shall certify the same to the
president of the board of public improvements, and
the president of said board shall assess it as a special
tax against all of the lots or parcels of ground in the
joint sewer district, in the ratio that the area of each
lot or parcel of ground bears to the area of the whole
district, exclusive of the area of streets, avenues, pub-
lic highways and alleys, and the president of said
board shall cause to be issued a special taxbill against
each lot or parcel of ground in the joint sewer dis-
trict, giving the name of the owner thereof, in favor
of the contractor, which shall be collected and paid as
provided in this article; provided, however, that if
the joint district sewer will drain territory part of
which lies outside of the city limits, the city of St.
Louis shall pay from the public revenue part of the
cost of the joint district sewer in the proportion that
the area of that part of the territory drained by the
joint district sewer which lies outside of the city lim-
its bears to the whole area drained; and the remain-
der of the cost of the joint district sewer shall be paid
for as hereinbefore provided. When the extent and
character of a joint district sewer is such as, in the
opinion of the board of public improvements, renders
its division into sections advisable, an ordinance di-
recting and authorizing the construction of one or
more sections may be passed, and when the work in
any such section is fully completed, special taxbills to
the amount of the cost of such section shall be issued
as herein provided. Joint district sewers shall be
constructed of such material and of such dimensions
as may be considered necessary and expedient by the
board of public improvements, and authorized by or-
dinance, and they may be connected with other sewers
of any class or with some course of drainage.''

The amendments as to district and private sewers

are not relevant to this case, and hence are not referred to herein.

Under these amendments the municipal assembly of St. Louis adopted ordinances numbered 20545 and 20546. The first established Arsenal Street Joint Sewer District, by metes and bounds. The second authorized the construction of a joint-district sewer, within said sewer district, to-wit, on Arsenal street, from the Arsenal street sewer at the intersection of Arsenal street and Ninth street, westwardly to Illinois avenue, intercepting at the latter place the Arsenal street sewer. This ordinance contained an appropriation of two thousand dollars to pay for the portion of the work that would be chargeable against the property of the city in the joint district.

The joint sewer district established by the first ordinance was sixteen blocks from north to south and about twenty blocks from east to west. The length of the joint district sewer authorized by the second ordinance was about ten blocks. A large number of previously constructed district sewers are embraced in the newly-created joint sewer district. The plaintiff owns two lots within the joint sewer district, one located eleven and the other eight blocks from the joint district sewer. Both of these houses have connection with district sewers, and those district sewers connect with the public sewer at the intersection of Wyoming street and Illinois avenue. There is now a public sewer, called the Arsenal street sewer, which runs east on Arsenal to Illinois avenue, then south on Illinois avenue one block to Wyoming street, then east on Wyoming street, ten blocks, to Ninth street, then north on Ninth street, one block, to Arsenal street, and then east on Arsenal street to the levee. It is this sewer with which the district sewers that drain plaintiff's houses connect.

The public Arsenal street sewer is insufficient to carry off the sewage and drainage that comes from the several district sewers that empty into it. Especially is this true as to the portions thereof on Illinois ave-

nue, Wyoming street, and Ninth street, where the fall is only one foot to the thousand. The result is that in times of freshets, which occur from two to four times a year, the public sewer at those points overflows, through the manholes, and submerges the streets and sidewalks and fills the cellars of the houses. The water does not back up into the houses that, like the plaintiff's, are located on the high lands, as it does in the houses that are located in the low lands, but the gases and odors are forced into all the houses, wherever located, unless the sewer connections are exceptionally good.

The purpose of this joint district sewer is to remedy this condition by connecting the public sewer at Arsenal and Illinois streets with the public sewer at Ninth and Arsenal streets. East of Ninth street the public sewer is sufficient to take care of all the sewage and drainage that is now, or that, after the joint-district sewer is constructed, will be, drained into it. By constructing this joint district sewer on Arsenal street, the present overtaxing and consequent overflowing of the public sewer on Illinois avenue, Wyoming and Ninth streets, will be relieved, and that sewer will then be sufficient to take care of and carry off all the sewage and drainage that drains into it from the district sewers, among them those with which the plaintiff's houses are connected. And in addition to this if, in times of extraordinary freshets, those parts of the public sewers can not carry off the waters, the conditions, as to those parts, will be relieved by the excessive waters being forced north on Illinois street from Wyoming street to Arsenal street, and there emptying into this joint district sewer and being carried off by it. So that from every point of view the plaintiff's property will be benefited by the construction of this joint-district sewer. The benefit will not be as direct as that which will be done to property located on a lower level, but it will be benefited relatively as much by this joint district sewer as it is by the district sewers, with which it directly connects.

The contract for the construction of this joint district sewer had been legally let to the defendant, the Buehler & Cooney Construction Company, and the city officers were about to give the proper order for the work to commence, when the plaintiff instituted this suit in equity to enjoin the doing of the work or the issuing of special taxbills in payment therefor against the plaintiff's lots.

## I.

The constitutionality of charter provisions providing for the construction of streets, alleys, or sewers, and charging the cost of such construction proportionately upon all property abutting the improvement or within the established benefit district, either according to the front-foot rule or according to the area rule, is no longer open to debate.   All such questions have been settled by the decisions of this court and those of the Supreme Court of the United States.   [St. Louis v. Oeters, 36 Mo. 456; Kansas City v. Ridenour, 84 Mo. 253; St. Joseph v. Owen, 110 Mo. 445; Heman v. Allen, 156 Mo. 534; Heman v. Schulte, 166 Mo. 409; Barber Asphalt Pav. Co. v. French, 158 Mo. 534; Hill v. Swingley, 159 Mo. 45; Schumate v. Heman, 181 U. S. 402; French v. Barber Asphalt Paving Co., 181 U. S. 324.]

Therefore, the only question open to discussion in this case is whether the city in this case was acting within the scope of its charter power.

At the outset it is proper to say that the question of whether this sewer would or would not have been a public sewer within the purview of the old charter, is wholly immaterial.   The same power that made the old charter and provided therein for public, district and private sewers and how each should be paid for, abolished the old charter provisions and substituted the present charter provision providing for public, district, joint district, and private sewers, and how they should be paid for.   The power to enact laws always

carries with it the power to repeal or abolish such laws and to enact new and, if desired, entirely different laws. The people provided what should be public sewers and how they should be paid for, and the people abolished those provisions and enacted new ones in their stead. The people had power to abolish public sewers entirely, and to provide for district sewers entirely, or for district, joint district and private sewers. The people had the power to require that all sewers should be paid for out of public revenue, and the people had just as much power to provide that all sewers, by whatever name they might be called, should be paid for by special assessments against the property benefited thereby, and to apportion that benefit according to the front-foot rule or the area rule or the benefit-district-area rule. It was the people's business; they were legislating for their own benefit and for the health and welfare of the whole people of the locality or city, and under our laws they had full power to act.

The people of St. Louis have acted within their powers, and it only remains to see whether the officers and agents of the people acted within the scope of the powers conferred upon them by the people, when they adopted the ordinances in question here.

The evidence in this case is not sufficient to show whether a sewer on Arsenal street from Illinois street to Ninth street, would or would not have been a public sewer under the old charter; that is, it is not sufficient to show whether such a sewer constructed between those termini would be along one of the principal courses of drainage or not. But as the sewer to the east and west of such termini was a public sewer constructed under the old charter, it may be assumed for the purposes of this case that the sewer provided by these ordinances would have been a public sewer under the old charter. This fact, however, does not make it a public sewer under the amended charter of 1901, nor does such fact have any tendency to impair the right of

Vol 170 mo—29.

the city to construct this sewer as a joint district sewer, nor to make it a public and not a joint district sewer.

It is certain that this sewer is not a public sewer within the meaning of the amended charter. It is not a sewer heretofore constructed or acquired under authority of an ordinance and paid for wholly out of general revenue, and it is not a sewer deemed expedient by the board of public improvements and to be constructed without creating a sewer district or joint sewer district, and therefore it does not fall within the definition of a public sewer as prescribed by the new charter.

It is equally certain that it is not a district sewer within the meaning of the new charter, nor is it a private sewer. This process of reasoning by exclusion, leaves it only possible for this sewer to be a joint district sewer. That is, a sewer constructed or acquired under the authority of ordinances, uniting one or more districts or unorganized territory, for the purpose of providing main outlets or intercepting sewers for the joint benefit of such districts or territory and paid for by special taxes assessed upon all property in said joint sewer district. Such is the definition of a joint district sewer in the amended charter, and that definition fits this case. For this sewer is made by an ordinance uniting more than one district and providing a main outlet or intercepting sewer for the joint benefit of such districts, and is to be paid for by special taxes assessed upon all property in said joint sewer district. Whatever else, therefore, it might properly have been denominated under any other law, it is strictly a joint district sewer within the meaning of the amended charter. The evidence shows that the plaintiff's lots will be benefited by the construction of this sewer. Not directly as much, perhaps, as lots located on a lower level, but relatively as much as they are by district sewers. The plaintiff's lots are located on high ground, so that they are not affected by the overflow of the sewers, like the lots located on the lower ground. The plaintiff is the dominant owner, while

the owners of the lots located on the lower land are the servient owners. The servient owners must suffer the consequences of surface waters flowing unrestrained on to their lands from the land of the dominant owners. But while this is true it does not cover this case. For, in addition to surface waters, the district sewers bring down from the plaintiff's lots sewage, decaying animal and vegetable matter and refuse, and in times of freshets the existing sewers are not sufficient to carry off both such drainage and such sewage, and the consequence is the contents of the sewers overflow and spread out over the streets and pavements and into the cellars of the houses of the servient owners, and thereby create filth, discomfort and disease. This additional servitude is cast upon such servient estates by the sewers from the plaintiffs' dominant estate, and this the servient owners are not bound by the laws of nature to submit to. To remedy the injury which the plaintiff helps to inflict, the city, as the protector of the health of the people, is about to construct this sewer. There can be no two minds upon the question of a direct special benefit being conferred upon plaintiff's lots by the construction of this joint district sewer, under the evidence in this case.

But aside from this, the question of whether the plaintiff's lots would or would not be benefited by the construction of this sewer, is a legislative and not a judicial question, and the municipal legislature adjudged that they would be benefited and fixed the ratio of such benefit, when it established the joint sewer district, and as there is no question of fraud or oppression of the municipal assembly in so passing such ordinance (even if such allegation would convert the question into a judicial one, as to which it is not necessary now to decide), such judgment of the assembly is conclusive. [City of St. Joseph v. Farrell, 106 Mo. 437; Heman v. Allen, 156 Mo. 534; Schumate v. Heman, 181 U. S. 402; Heman v. Schulte, 166 Mo. 409; Hill v. Swingley, 159 Mo. 45; Barber Asphalt Co. v. French,

158 Mo. 534; Idem, 181 U. S. 324; Johnson v. Duer, 115 Mo. 366.]

For these reasons the officers and agents of the city acted within the powers conferred upon them by the charter in the passage of the ordinances in question, and in ordering the construction of this joint district sewer, and therefore the judgment of the circuit court in favor of the defendants was right, and it is affirmed. All concur.