## FRUIN-BAMBRICK CONSTRUCTION COMPANY v. ST. LOUIS SHOVEL COMPANY, Appellant.

**Division One, April 13, 1908.**

1. **CONSTITUTIONAL LAW: Special Taxes: Midway Line.** Section 14 of article 6 of the charter of St. Louis, fixing the boundary line of a taxing district midway between the street to. be improved and the next parallel or converging street, is not in conflict with that part of the Federal Constitution which prohibits a State from denying to any person within its jurisdiction the equal protection of the laws.

2. **SPECIAL TAX: Parallel Street.** To be a parallel street within the meaning of section 14 of article 6 of the charter of St. Louis it is not necessary that the street be one which parallels the street to be improved for the whole length of the improvement. Where the boundary lines of the taxing district are irregular by reason of short parallel streets which are of different distances from the street being improved, the special tax bills are not void because said short streets do not parallel said street the full distance of the improvement.

3. ———: ———: **Next: Within Six-hundred Feet.** The taxing district, under section 14 of article 6 of the charter of St. Louis, may be established by drawing a line midway between the street to be improved and the next parallel or converging street, without reference to whether or not the next parallel street is within six hundred feet of the street to be improved. The term parallel street as used in the charter does not mean a street six hundred feet from, or within six hundred feet of, the street to be improved.

Appeal from St. Louis City Circuit Court.—*Hon. Moses N. Sale,* Judge.

Affirmed.

*Powell & Zumbalen* for appellant.

(1)    (a)    The provisions of the amended charter making three-fourths of the cost of street improvements a charge upon all the property in a district defined and established according to certain general rules

therein laid down, are to be construed in the light of
the general principles underlying and limiting the
power to levy special taxes for local improvements.
Newby v. Platte County, 25 Mo. 271; Kansas City v.
Bacon, 157 Mo. 463; Kansas City v. Baird, 98 Mo. 215;
2 Dillon's Mun. Corp. (4 Ed.), sec. 761. (b) By the
phrase "parallel or converging street," as used in said
provisions, is meant a parallel or converging street not
over 600 feet distant from the street to be improved,
and which parallels or converges to the street to be
improved for the entire length of the improvement.
Asphalt & Gran. Const. Co. v. Haeussler, 100 S.
W. 14; Louisville v. Asphalt Co., 102 S. W.
806. (2) Said charter provisions, as construed by
the lower court, are in violation of the first section of
the fourteenth amendment to the Federal Constitution
in that they deprive defendant of its property without
due process of law, and deny to defendant and its prop-
erty the equal protection of the laws. Norwood v.
Baker, 172 U. S. 269; Spencer v. Merchant, 125 U. S.
345; Davidson v. New Orleans, 96 U. S. 97; Hagar v.
Reclamation District, 111 U. S. 701; Walston v. Nevin,
128 U. S. 578; Construction Co. v. Haeussler, 100 S.
W. 14; 2 Dillon, Mun. Corp. (4 Ed.), sec. 761.

*Hamilton Grover* for respondent.

(1) It is not necessary under section 14 of article
6 of the charter, that the street parallel to the street
to be improved must necessarily be the next parallel
street throughout the whole length of the improvement
to be made, but the district line must deflect accord-
ingly as the street to be improved is paralleled its
whole length or partly by one street and partly by
another. Sec. 14, art. 6, amended charter; Collier
Estate v. Western Paving & Supply Co., 180 Mo. 362.
(2) It is not necessary that the next parallel or con-
verging street, within the meaning of section 14 of

article 6, should be within 600 feet of the street to be improved, but the words "next parallel or converging street" mean the next street which parallels or converges to the street to be improved, although said next parallel or converging street may be more or less than 600 feet from the street to be improved. Sec. 14, art. 6, amended charter; Collier Estate v. Western Paving & Supply Co., 180 Mo. 362. (3) Section 14 of article 6 does not violate the "equal protection of the laws" clause of the fourteenth amendment to the Constitution of the United States. Collier Estate v. Western Paving & Supply Co., 180 Mo. 362; Meier v. St. Louis, 180 Mo. 391; Cotting v. Godard, 183 U. S. 79; Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232; Bank v. Pa., 167 U. S. 461; Davidson v. New Orleans, 96 U. S. 97; Ins. Co. v. Connecticut, 185 U. S. 364; Giozza v. Tiernan, 148 U. S. 657; Henderson Bridge Co. v. Henderson, 173 U. S. 616; Walton v. Nevin, 128 U. S. 578; Spencer v. Merchant, 125 U. S. 337; Pryor v. Construction Co., 170 Mo. 439; Cooley on Taxation (3 Ed.), 254; Barber Asphalt Pav. Co. v. French, 158 Mo. 534; French v. Barber Asphalt Pav. Co., 181 U. S. 345. (4) Section 14 of article 6, of the amended charter does not violate the "due process of law" clause of the fourteenth amendment to the Constitution of the United States. Meier v. St. Louis, 180 Mo. 391; Pryor v. Construction Co.; 170 Mo. 439; Davidson v. New Orleans, 96 U. S. 97; Barber Asphalt Pav. Co. v. French, 158 Mo. 534; French v. Barber Asphalt Pav. Co., 181 U. S. 345.

GRAVES, J.—The statement of the issues of this case is so succinctly made by learned counsel for the respondent, that we borrow his language as far as it goes, thus:

"This is a suit on a special tax bill issued by the city of St. Louis for the proportionate cost of paving

Sarah street, a thoroughfare running north and south in said city. The respondent is the contractor who did the work and the appellant is the owner of the property against which the tax bill is issued. No question is involved as to the passage of the ordinances, letting of the contract, doing of the work, and the issuance of the tax bill to the respondent. The sole issues grow out of the establishment of the taxing district under section 14, article 6, of the St. Louis charter. The taxing district was established by drawing a line midway between the street to be improved and the next parallel or converging street, without reference to whether or not the next parallel street was within 600 feet of the street to be improved, and without reference to whether or not the next parallel street was parallel to the street to be improved the whole length of the improvement. The appellant claims that the district established in this way is erroneous, on the theory that for a street to be the next parallel street within the meaning of the St. Louis charter, it must be the next street which parallels the street to be improved the whole length of the improvement, and upon the further theory that for the street to be the next parallel street within the meaning of the St. Louis charter, it must be within 600 feet of the street to be improved.

"The appellant further contends that section 14, article 6, of the charter, otherwise construed, would violate that clause of section 1 of the Fourteenth Amendment to the Constitution of the United States which prohibits a State from denying to any person within its jurisdiction the 'equal protection of the laws.'

"The lower court held that the district as established by the city authorities was properly laid out and that it was not necessary that a street to be a parallel street should be the next street parallel to the improvement the whole length of the improvement, nor that it should be within 600 feet of the street to be

improved. The lower court further held that the charter provision was not in violation of the 'equal protection' clause of the Fourteenth Amendment to the Federal Constitution.

"Judgment was entered for the respondent on the special tax bill, from which judgment, after the usual motions, defendant has appealed to this court."

The pertinent portions of the city charter involved, section 14, article 6, are as follows:

"Special taxes for the improvement of streets, avenues and public highways shall be levied and assessed as follows:

"The total cost . . . shall be ascertained and one-fourth thereof shall be levied and assessed upon all property fronting upon or adjoining the improvements, in the proportion that the frontage of each lot, so fronting or adjoining, bears to the total aggregate of frontage of all lots or parcels of ground fronting upon or adjoining the improvement, and the remaining three-fourths of the cost so ascertained shall be levied and assessed as a special tax upon all the property in the district to be defined and bounded as hereinafter provided, in the proportion that the area of each lot or parcel of ground, or the part of such parcel of ground lying within the district bears to the total area of the district, exclusive of streets and alleys.

"The district herein referred to shall be established as follows:

"A line shall be drawn midway between the street to be improved and the next parallel or converging street on either side of the street to be improved, which line shall be the boundary of the district, except as hereinafter provided, viz.:

"If the property adjoining the street to be improved is divided into lots, the district line shall be so drawn as to include the entire depth of all lots fronting on the street to be improved. If the line

drawn midway, as above described, would divide any lot lengthwise, or approximately lengthwise, and the average distance from the midway line so drawn to the nearest boundary line of the lot is less than 25 feet, the district line shall in such case diverge to and follow the said nearer boundary line.

"If there is no parallel or converging street on either side of the street to be improved, the district line shall be drawn three hundred feet from and parallel to the street to be improved; but if there be a parallel or converging street on the one side of the street to be improved to fix and locate the district line, then the district line on the other side shall be drawn parallel to the street to be improved and at the average distance of the opposite district line so fixed and located.

"Provided that if any property in a district established as herein provided is not liable to special assessment, the city shall pay the proportion of cost of the improvement which would have been assessed against such property. All of the property in the lots, blocks or tracts of lands lying between the street to be improved and the district lines established as above specified, shall constitute the district aforesaid."

The property of the defendant did not abut Sarah street, the street which was improved, but was 253 feet or more to the east thereof. Counsel for appellant correctly describes the metes and bounds of the district thus:

"On the eastern side of said Sarah street between Duncan avenue and Clayton avenue the district line was drawn midway between said Sarah street and Vandeventer avenue, and at a distance of 731 feet, 10 inches, from said Sarah street in blocks 2585 and 3952, so as to include the whole of defendant's said property, and in blocks 2582, 3960 and 3963 at a distance of

601 feet 5½ inches, or more, from said Sarah street; in City Block 3959 between Clayton avenue and Gratiot street and in the north part of Block 3958 (south of Gratiot street) the district line was drawn midway between said Sarah street and Hawk avenue at a distance of 244 feet, more or less, from said Sarah street; in the southern part of Block 3958, the district line was drawn midway between said Sarah street and Manchester avenue at a distance of 406 feet, more or less, from said Sarah street; in the northern part of Block 3957A the district line was drawn midway between Sarah street and Manchester avenue, at a distance of 394 feet 5½ inches, more or less, from said Sarah street; in the southern part of said Block 3957A, the district line was drawn 266 feet, 6 3-8 inches east of said Sarah street; in Block 3957B, the district line was drawn 35 feet east of said Sarah street:

"On the west side of said Sarah street, between Duncan avenue and Clayton avenue, the district line was drawn midway between said Sarah street and Boyle avenue, at a distance of 630 feet 5 inches from said Sarah street; between Clayton avenue, and Gratiot street, in Block 3962 and 3963 the district line was drawn midway between said Sarah street and Boyle avenue, at a distance of 547 feet 7 inches from said Sarah street; in the northern part of Block 3964 the district line was drawn midway between said Sarah street and Boyle avenue at a distance of 546 feet 7½ inches from said Sarah street; in the southern part of Block 3964, and the northern part of Block 3965, the district line was drawn 91 feet 9½ inches from said Sarah street and midway between said Sarah street and an alleged street in said Block 3964 and 3965; in the southern part of Block 3965 the district line was drawn midway betwen said Sarah street and Boyle avenue at a distance of 546 feet 9 inches, more or less, from said Sarah street; in the northern part of Block

5114A the district line was drawn midway between said Sarah street and Boyle avenue at a distance of 547 feet 3 inches from said Sarah street; in the south part of said Block 5114A, the district line was drawn midway between said Sarah street and Gibson avenue, at a distance of 364 feet 10 inches from said Sarah street.''.

From this description will appear the irregular boundary lines of the taxing district both upon the east and west of Sarah street. Other plats of taxing districts were introduced in evidence; showing even more pronounced irregularity than the one involved here, but likewise showing the construction placed by the city authorities upon the charter provisions in question. From these it appears that the first parallel or converging street is ofttimes at a very much greater distance than in the case before us. In some instances the streets were a very great distance apart. For the legal questions involved, more definite statement would be but to encumber the opinion. Such are the issues.

I. It is first urged that the charter provisions herein above set out are violative of the Federal Constitution. If this were the first time that the question had been before the court, we would feel that a more extended discussion of the question was required. But the identical question has been here before, although not in a case so pronounced in terms as is the one at bar. [Meier v. St. Louis, 180 Mo. 391.] In that case this court In Banc said of this same charter provision:

''It is now the settled law in this court that special assessments for local improvements are referable to the taxing power. [Garrett v. St. Louis, 25 Mo. 505; Heman v. Allen, 156 Mo. 534; Barber Asphalt Co. v. French, 158 Mo. 534; Ibid v. Ibid, 181 U. S. 324.]

''It is within the power of the Legislature to create special taxing districts, and to charge the cost of a local improvement, in whole or in part, upon the property in

said districts, either according to valuation or superficial area or frontage. [Webster v. Fargo, 181 U. S. 394; Prior v. Construction Co., 170 Mo. 439; Asphalt Co. v. French, 158 Mo. 534; Spencer v. Merchant, 125 U. S. 345; Egyptian Levee Co. v. Hardin, 27 Mo. 495.]

"It has also been ruled that the provisions of article 10 of the Constitution of Missouri in regard to taxation, are applicable only to taxation in the ordinary acceptation of the term, and are inapplicable to these special assessments. [Farrar v. St. Louis, 80 Mo. 379, and cases cited.] And the same rule is held as to sections 3, 4 and 11, as to the uniformity of taxation. [Farrar v. St. Louis, supra; City of St. Joseph to use v. Owen, 110 Mo. 445.] The objections to the charter amendments on the ground of unconstitutionality are not, therefore, tenable.

"II.   As to the contention that the special assessments amount to a taking of plaintiff's property without due process of law, it may be said that no notice is required by the Constitution to be given propertyowners respecting those matters which the Legislature itself determines, or delegates to the municipal authorities. [Spencer v. Merchant, 125 U. S. 345; Williams v. Eggleston, 170 U. S. 304; St. Louis v. Ranken, 96 Mo. 497.] Publication of notice to the propertyowners, and opportunity to be heard before the tribunal upon which is devolved the duty of ascertaining facts and acting therein in the special assessment procedure, satisfies the constitutional requirement, and is due process of law as to those matters to be passed upon by such tribunal.

"We think section 14 of article 6 of the amended charter of St. Louis complies with this requirement.

"When the taxing district has been fixed by valid legislation and when the apportionment of the cost of the improvement upon the property in the district has

been so fixed, the owner of the property in the district cannot be heard to contend in the court that his property was not in fact benefited, or to the amount assessed in accordance with such apportionment. [Prior v. Construction Co., 170 Mo. 439.]

"The charter of St. Louis adopted by a vote of its people in obedience to an express grant by the Constitution of the State, has, with respect to municipal matters, including special assessments for local improvements, all the force and effect of an act of the Legislature. [City of St. Louis v. Fischer, 167 Mo. 654; Prior v. Construction Co., 170 Mo. 439; St. Louis v. Gleason, 15 Mo. App. 25; Ibid v. Ibid, 93 Mo. 33; Kansas City v. Oil Co., 140 Mo. 468.]"

At the same term at which this opinion was rendered were the cases of Collier Est. v. Western Pav. & Supply Co., and Kauffman v. Western Pav. & Supply Co., 180 Mo. 362, in which in the brief of counsel the same question was in a way urged. The two opinions were written by GANTT, J., and evidently handed down contemporaneously. These cases all recognize the constitutionality of this charter provision and under these decisions no doubt the parties proceeded in the case at bar. These cases are practically rules of property in the case at bar and we would be loth to depart from them, were our views to the contrary. However, our views are in harmony with those therein expressed. Those cases were well considered and reviewed the case law of the subject and we see no good reason to depart therefrom at this time. It is true that in this case we have much evidence tending to show the extreme irregular boundary lines of different districts in the city which have been fixed under the strict letter of the city charter. Some of the districts may be more pronounced than the one at bar, but in this one, at the point where the property in dispute lies, the district line is over 700 feet east of the street improved, whilst

at another point, on the same side, it only lies 35 feet. But in each instance the line was fixed midway between the street improved and the next parallel or converging street, as such parallel or converging street was found and determined by the city authorities. Whether they determined them aright under the charter is another question to be presently discussed.

The constitutionality of this charter provision having been determined by this court In Banc and the views so expressed being in full accord with our views, this point will be ruled against the defendant.

II. A further contention is that a street to be a parallel street within the meaning of the charter provision must be one which parallels the street being improved for the whole distance of the improvement. This is not a new question in this court. In the Meiers case, supra, the taxing district was laid out by taking into consideration what proved to be a private way. This private way was between the street being improved and another street, and we held among other things that the district line should have been established midway between the street being improved and the next parallel street, and not midway between the street being improved and this private way. But in addition to this question the further question of what was considered a parallel street was discussed. In the Collier case, 180 Mo. l. c. 390, the court said: "We do not think it is necessary that the street parallel to the one to be improved must necessarily be parallel throughout the full length of the improvement to be made, but the district line may and must deflect accordingly as the street to be improved is paralleled its whole length or partly by one street and partly by another. It results that for this additional reason the district was improperly defined and created, and the taxbills are illegal and void."

In the case at bar the city authorities followed to

the letter the charter provisions as the same had been construed by this court. The boundary lines of the district are exceedingly irregular by reason of short parallel streets, which are of different distances from the street being improved, and which do not parallel said street for the full distance of the improvement. But this question was before us in the Meier case, and there ruled against the present contention. To that ruling we adhere.

III. It is next urged that inasmuch as the charter provides that if there are no parallel or converging streets, the district line shall be drawn 300 feet from the street being improved, the term "parallel street" as used in the charter would therefore mean a street six hundred feet from, or within six hundred feet of, the street being improved. An extremely plausible argument is made by learned counsel in urging this construction. To give the charter such a construction would be to nullify the terms thereof. To give it such a construction would be to give it a meaning not contemplated by the framers of the instrument. The language of the charter is plain and unambiguous. In such case the court has a plain rule of construction to follow. So that whatever may be the rulings in other jurisdictions we deem the questions involved in this case settled in this State. A discussion of cases from other jurisdictions will therefore be omitted. To depart from the Collier case at this time would be extremely harsh toward the rights of parties relying thereon.

From what has been said it follows that this case should be affirmed, and it is so ordered.

All concur.