# GILSONITE ROOFING & PAVING COMPANY v. ST. LOUIS FAIR ASSOCIATION, Appellant.

### In Banc, December 17, 1910.

1. **SPECIAL TAXES: Equality of Benefits.** To determine by a general rule, such as a charter prescription or an ordinance in pursuance thereof, the actual benefit that each lot or piece of property will derive from a public improvement, such as paving a street, or its actual proportion of the cost as compared with the benefit to other lots, and to lay the tax so as to impose on each piece of property the burden of paying for its special benefit, is to do more than the human ingenuity has yet been able to perform. A rule by which a benefit district, in case of street improvement, is marked out, like all laws, is one which aims to do justice in a general way, but cannot be made to accurately fit every case. It would be a physical impossibility to accomplish absolute equality. But inequality does not necessarily mean injustice.

2. ———: ———: **Legislative Question.** Whether a proposed improvement is of a character that will benefit the property charged with its cost, is, in the first instance, a legislative question, and the legislative discretion goes to the point of determining the territorial extent to which the benefit will go, and the courts will not interfere to prevent the assessments, except perhaps to prevent abuse of power.

3. ———: ———: ———: **Area Assessment.** A benefit assessment of so much per square foot on all territory in the district is not illegal because some lots are longer than others, due to a converging street, and therefore one lot of greater depth must bear a heavier tax than another lot of a less depth. The rule must be the same for both, and the benefit will extend proportionately to the middle of each, and if the owner of one must pay more than the owner of the other, it is because the benefit to one has a larger extent than the other. The cost of the improvement is not required to be so distributed that the total area to be taxed must be drawn equally from all property within the same distance of the street to be improved.

4. ———: ———: ———: ———: **Midway Line: Unplatted Ground.** In establishing the benefit district, where there is a parallel or converging street on each side of the street to be improved, the charter requires the boundary line of the district to be drawn "midway between the street to be improved and the next parallel or converging street on each side", and an ordinance which so fixes the line is valid, and that rule applies to land which has not been platted or divided into blocks and lots.
   *Held*, by WOODSON, J., dissenting, that the charter provision applies only to tracts of land which have been platted and laid out into lots and blocks, streets and alleys.

5. **AREA ASSESSMENT: Midway Line: Constitutional.** The charter required one-fourth of the cost of the street improvement to be assessed according to the front-foot rule, and the other three-fourths according to the area rule on all property in the district, and required the district, as to lands not divided into lots, to be defined and bounded by a line to "be drawn midway between the street to be improved and the next parallel or converging street on each side of the street to be improved". *Held*, that this charter provision is not in conflict with either sections 20 or 30 of the Missouri Constitution or the Fourteenth Amendment to the U. S. Constitution.
   *Held*, by WOODSON, J., dissenting, that if said charter provision was intended to apply to unplatted land, it is unconstitutional.

6. **TAXBILL:** Interest on Judgment: Not a Contract. The statute provides that a judgment on a contract which bears more than six per cent interest shall bear interest at the same rate as that expressed in the contract, but all other judgments are to bear interest at six per cent; the charter provides that a special taxbill, after the prescribed notice and after maturity, shall bear eight per cent interest, but says nothing as to the rate of interest a judgment on the taxbill shall bear. *Held*, that a special taxbill is not a contract, and a judgment thereon can bear only six per cent. [Distinguishing Dickey v. Porter, 203 Mo. l. c. 39.]

Appeal from St. Louis City Circuit Court.—*Hon. Walter B. Douglas,* Judge.

REVERSED AND REMANDED (*with directions*).

*Bond, Marshall & Bond* and *David Goldsmith* for appellant.

(1) When properly construed, there is within the meaning of the charter no parallel street to Grand avenue on the west between Natural Bridge road and Penrose street. Louisville v. Asphalt Co., 102 S. W. 806; McGrew v. Kansas City, 64 Kas. 61; Charter of St. Louis, art. 6, sec. 14. (2) Under the facts in this case, the district line west of Grand avenue between Natural Bridge road and Penrose street, should have been drawn at a distance from Grand avenue equal to the average distance from Grand avenue to the district line on the eastern side. Louisville v. Asphalt Co., 102 S. W. 806; McGrew v. Kansas City, 64 Kas. 61; Charter of St. Louis, art. 6, sec. 14. (3) As construed by the trial court, the charter provides for a scheme of taxation incapable of being administered with any semblance of equality, in that it would necessarily work an inequality in all cases where the street improved abuts upon an unsubdivided tract of land, and hence amounts to a denial of the equal protection of the laws within the meaning of the Fourteenth Amendment to the Federal Constitution. Norwood v. Baker, 172 U. S.

269; French v. Paving Co., 181 U. S. 324; Tonawanda v. Lyon, 181 U. S. 389; Cass Farm Co. v. Detroit, 181 U. S. 395; Detroit v. Parker, 181 U. S. 399; Martin v. District of Columbia, 205 U. S. 135; Independence v. Gates, 110 Mo. 374; Preston v. Roberts, 12 Bush 570; Davis v. Litchfield, 172 U. S. 327; Thomas v. Gain, 35 Mich. 155; People v. Lynch, 51 Cal. 19; Allen v. Drew, 44 Vt. 188. (4) Section 14 of article 6 of the charter as construed by the trial court assesses appellant's land for the cost of improvements grossly in excess of any benefits which said land could possibly have received, and to that extent violates the due process clause of the Fourteenth Amendment to the Federal Constitution, and also violates section 30 of article 2 of the Constitution of Missouri. Norwood v. Baker, 172 U. S. 269; French v. Paving Co., 181 U. S. 324; Martin v. District of Columbia, 205 U. S. 135; Tonawanda v. Lyon, 181 U. S. 389; Cass Farm Co. v. Detroit, 181 U. S. 395; Detroit v. Parker, 181 U. S. 399; Elliott on Roads & Streets (2 Ed.), sec. 566. (5) The judgment on a special taxbill, like all other judgments in civil cases, bears interest at the rate of six per cent per annum, and not eight per cent per annum. City v. Allen, 53 Mo. 57; St. Joseph ex rel. v. Forsee, 110 Mo. App. 241; Paving Co. v. Field, 134 Mo. App. 668; R. S. 1899, sec. 3707.

*Nagel & Kirby* for respondent.

(1) Under the provisions of the charter of St. Louis as construed by this court, Fair avenue is the next parallel street to Grand avenue on the west between Natural Bridge road and Kossuth avenue, and the district line was properly drawn midway between Grand avenue and Fair avenue. Charter, sec. 14, art. 6; Collier Estate v. Paving Co., 180 Mo. 362; Fruin-Bambrick Co. v. Shovel Co., 211 Mo. 524; State ex rel. v. St. Louis, 211 Mo. 591. (2) The fact that the street improved abuts upon a large undivided

tract of land does not prevent the application of the general rule laid down by the charter for the establishment of the taxing district.   Charter, sec. 14, art. 6; Collier Estate v. Paving Co., 180 Mo. 362; State ex rel. v. St. Louis, 183 Mo. 230.   (3)   The provisions of the St. Louis Charter concerning taxation for street improvements do not violate the provisions of the Fourteenth Amendment to the Federal Constitution relating to "equal protection of the laws," and "due process of law."   Collier Estate v. Paving Co., 180 Mo. 362; Meier v. St. Louis, 180 Mo. 391; Fruin-Bambrick Co. v. Shovel Co., 211 Mo. 524; Davidson v. New Orleans, 97 U. S. 92; French v. Barber Asphalt Paving Co., 181 U. S. 395; Cotting v. Godard, 183 U. S. 79; Railroad v. Pennsylvania, 134 U. S. 232; Bank v. Pennsylvania, 167 U. S. 461; Prior v. Construction Co., 170 Mo. 439; State ex rel. v. St. Louis, 211 Mo. 591; Henderson Bridge Co. v. Henderson, 173 U. S. 592.   (4) The judgment on this special taxbill bears interest at the rate of eight per cent per annum.   R. S. 1899, sec. 3707; Charter, sec. 14, art. 6; Dickey v. Porter, 203 Mo. 1.

VALLIANT, J.—This is a suit on a special taxbill issued by the city to pay in part for the reconstruction of Grand avenue from Natural Bridge road to Penrose street, done under city ordinance No. 20,662, which was enacted under section 14 of article 6 of the charter of the city of St. Louis.  The defendant corporation, being the owner of property abutting on the street where the improvement was made, filed an answer to the petition, averring that the taxbill sued on was illegal because of certain facts specifically pleaded; plaintiff filed a general demurrer to the answer, which the court sustained, and defendant declining to plead further, judgment was rendered for the plaintiff for $20,190.38, and defendant appealed.

The defense pleaded in the answer was substantially as follows:

Appellant's property consists of a tract of land of 132 acres, having a front on Grand avenue of 1474.88 feet, by a depth of 3895.83 feet, which has never been divided into city blocks, nor have any streets or alleys been cut through it. The land is bounded north by Kossuth avenue, south by Natural Bridge road, east by Grand avenue and west by Fair avenue. The land on the other side of Grand avenue fronting west is divided into lots and blocks by streets and alleys, and so also is the land north and south of defendant's property fronting west on Grand avenue. In laying out the district to be assessed for the payment of the improvement the ordinance draws the east boundary, varying according to the depth and width of the lots, from 320.5 feet to 120 feet east of Grand avenue, and draws the west line through lots north and south of defendant's property fronting east on Grand avenue at an average depth of 202 1/4 feet, whilst through defendant's property the west line is drawn half way between Grand avenue and Fair avenue, thereby including defendant's property to a depth of 1947.5 feet for its whole width from Natural Bridge road to Kossuth avenue. From Grand avenue west through defendant's property Fair avenue is the next parallel or converging street. The total frontage of the street improved, counting both sides, is 4087.73 feet, of which the frontage of defendant's property is 1474.88 feet. The total cost of the improvement was $23,278.62, of which $16,974.51 was assessed against defendant's property.

Section 14 of article 6 provides that one-fourth of the total cost of such improvement "shall be levied and assessed upon all the property fronting upon or adjoining the improvement, in the proportion that the frontage of each lot so fronting or adjoining bears to the total aggregate of frontage of all lots or parcels of ground fronting upon or adjoining the improvement."

One-fourth of the cost of this improvement was assessed against the fronting and adjoining property along this street in accordance with that rule and as to that there is no complaint. But the charter goes on to declare that "the remaining three-fourths of the cost so ascertained shall be levied and assessed as a special tax upon all the property in the district to be defined and bounded as hereinafter provided, in the proportion that the area of each lot or parcel of ground or the part of such parcel of ground lying within the district bears to the total area of the district, exclusive of streets and alleys. The districts herein referred to shall be established as follows: A line shall be drawn midway between the street to be improved and the next parallel or converging street on each side of the street to be improved, which line shall be the boundary of the district, except as hereinafter provided, namely: If the property adjoining the street to be improved is divided into lots, the district line shall be so drawn as to include the entire depth of all lots fronting on the street to be improved. If the line drawn midway as above described would divide any lot lengthwise or approximately lengthwise, and the average distance from the midway line so drawn to the nearer boundary line of the lot is less than twenty-five feet, the district line shall in such case diverge to and follow the said nearer boundary line. If there is no parallel or converging street on either side of the street to be improved, the district lines shall be drawn three hundred feet from and parallel to the street to be improved; but if there be a parallel or converging street on one side of the street to be improved to fix and locate the district line, then the district line on the other side shall be drawn parallel to the street to be improved and at the average distance of the opposite district line so fixed and located. Provided, that if any property in a district established as herein provided is not liable to special assessment, the city shall pay the proportion

of cost of the improvement which would have been assessed against such property. All of the property in the lots, blocks or tracts of land lying between the streets to be improved and the district lines established as above specified, shall constitute the district aforesaid.''

In establishing this benefit district the ordinance followed that clause of the rule prescribed in the charter above quoted which contemplated a parallel or converging street on each side of the street to be improved, and drew the line "midway between the street to be improved and the next parallel or converging street on each side,'' taking Fair avenue as the next parallel or converging street as far as concerned defendant's property. This resulted in the inequality complained of in defendant's answer, that is, that of a total area of 3,316,016 square feet in the district, 2,867,790 feet were taken in defendant's property, and of a total area tax of $17,458.95 the sum of $14,874.74 was assessed against defendant's property.

Appellant in its answer pleads that the ordinance is not authorized by the charter provision above quoted, and also that if that clause of the charter is to be interpreted as intended to authorize the result attempted to be accomplished by this ordinance then that clause in the charter is in violation of sections 20 and 30, article 2, of the Constitution of Missouri and the Fourteenth Amendment of the Constitution of the United States.

I. There is no question but that going through appellant's property from east to west Fair avenue is in fact the first parallel street to Grand avenue, and therefore there is no question but that the ordinance conforms strictly to the language of the charter in that respect. It is also a fact beyond question that the line drawn takes in a larger area of appellant's property than is taken of other property within the same dis-

tance of the street improved. Therefore, if the char-
ter is interpreted to mean that the cost of the improve-
ment must be so distributed that the total area to be
taxed must be drawn equally from all property within
the same distance of the street to be improved, then
the ordinance in question does not conform to the char-
ter. But it is not contended, that the charter must be
given that interpretation. The theory on which the
special tax is levied is that it is to pay for the benefit
conferred. To determine by a general rule the actual
benefit that each lot or piece of property would derive
from the improvement, or its actual proportion of the
cost as compared with the benefit to other lots, and lay
the tax so as to impose on each piece of property the
burden of paying for its especial benefit, is a problem
that human ingenuity has not yet solved. It is one of
the natural infirmities of human laws that they cannot
always measure out evenhanded justice to every one;
hardships will sometimes occur under the application
of any general law. A rule by which a benefit district
in a case of street improvement is to be marked out,
like all laws, is aimed to do justice in a general way,
but cannot be made to fit every case; it would be a
physical impossibility to accomplish absolute equality.
The sizes and shapes of the lots, the courses of the
streets and other physical facts necessarily cause in-
equality.

The framers of this section of the city charter evi-
dently realized the difficulty of making a general law
to fit every case; they knew what the different condi-
tions were, the different sizes, shapes and locations of
the lots, and the sometimes irregular courses of the
streets; they knew that in some places there would be
parallel or converging streets on both sides of the
street to be improved, and they made a rule for that
condition; they knew that sometimes there might be
no parallel or converging street on either side, and
they made a rule for that; and they knew that there

might be a parallel or converging street on one side
but none on the other, and they made a rule for that
condition. Thus they seem to have contemplated every
possible condition and to have made provision for it.
When we are interpreting a written law we must pre-
sume that the law-writers were cognizant of the con-
ditions about which they were writing and wrote with
those conditions in mind; we must presume that the
writers of this section of the charter knew that the
benefit districts to be marked out under the rules laid
down would in some cases work inequality and they
knew also that they could not lay down a rule that
would accomplish equality in every case. We can-
not say therefore that this ordinance is not within
the true meaning of the charter provision merely be-
cause it resulted in inequality. But by the use of the
word inequality in this connection we do not neces-
sarily mean injustice. The special tax to pay the cost
of street improvement is based on the theory that the
improvement benefits the property. Whether a pro-
posed improvement is of a character that will benefit
the property is in the first instance a legislative ques-
tion and courts will not interfere to prevent the assess-
ment, except perhaps to prevent palpable abuse of
power. The subject being in the first place within the
legislative discretion, that discretion goes to determine
the territorial extent to which the benefit will go. The
legislative authority in this instance has said that, al-
though on one side of the street the rule laid down
may take in greater depth in area than on the other,
yet the rule must be the same for both, because the
benefit will extend proportionately as well to the mid-
dle of a deep lot as to a shallow one, and the street to
be improved will afford an outgoing and an incoming
from and to a point in the middle line of the deep lot of
the same character as from a like point in the shallow
lot, the tax per square foot is the same in both lots,
and if the owner of one must pay more than the owner

of the other it is because the benefit to the one has a larger extent than the other.

In Collier v. Paving Co., 180 Mo. 363, this court required the boundaries of a benefit district to be corrected so as to carry the western line in property in Westmoreland and Portland Places to the midway between Kingshighway and Union avenue, because Union avenue was, in reference to those two places, the next parallel street to the street improved; whereas the property lying alongside of Portland Place on the north was assessed to a depth less than half that imposed on Westmoreland and Portland Places, because it was found that north of those two places there was a street between Kingshighway and Union avenue. In that case in the corrected boundary which this court required to be made there was a very great inequality, not so great as in the case at bar, but too great to be passed over as unimportant if inequality were a valid objection. Appellant recognizes the force of the decision in the Collier case, but seeks to distinguish it, not' on the ground that the inequality is greater in this case than it was in that, but on the ground that Westmoreland and Portland Places were platted and subdivided into lots, whereas appellant's property is a solid, undivided and unplatted tract of land. Assuming that Westmoreland and Portland Places were subdivided into lots and platted (although that fact does not very distinctly appear in the report of the case), the decision does not in any degree rest on that fact. It appeared in that case that Lake avenue was a street running from Lindell avenue north through Westmoreland and Portland Places, thence on to Delmar avenue, and the benefit district had originally been established with its western boundary midway between Kingshighway, the street improved, and Lake avenue, all the way from Lindell avenue to Delmar, but it appeared in the evidence that Lake avenue, from Lindell on through Westmoreland and Portland Places, was only a private

street, whereas from thence on it was a public street, and this court said that a private street was no street in the sense of that section of the charter, and therefore required the western line to be carried out to a line midway between Kingshighway and Union avenue, but left the boundary as it had been from Portland Place north to Delmar avenue, that is, midway between Kingshighway and Lake avenue. The decision did not notice at all the fact, if it was a fact, that those places were subdivided into lots and platted, but the decision rested solely on the ground that, as to those places, Union avenue was the next parallel street to Kingshighway.

It is contended that the reference in the charter to a condition in which there would be no parallel or converging street on either side of the street to be improved, would be meaningless unless it was intended to mean that on each side of the street to be improved there was a tract of land unplatted and undivided into lots. If that is what the charter was intended to mean, the meaning could have been expressed a great deal more clearly.

Appellant's argument proceeds on the idea that one cannot imagine a street in the city to which there would be no parallel or converging street on either side. In the argument on the part of the respondent our attention was called to what was said to be a public street in a narrow strip of land in the city where there was no street on either side.

A contention very similar to this was made in Fruin-Bambrick Construction Co. v. Shovel Co., 211 Mo. 524, and ruled against the contention. In construing a statute we have no right to import into it words that convey an idea not otherwise found in it, even if without such importation we should have to leave it meaningless. A reading of this section shows that it was written with care and understanding, the language is unambiguous and is not susceptible of the

construction sought to be put on it. During the oral argument a map of the city was displayed by the learned counsel for appellant and our attention was drawn to a large area in the southwest portion of the city that seemed to be undivided and unplatted tracts of land. There is nothing in the record before us that draws that area into this controversy and therefore nothing that is said in this opinion is intended as an indication as to what should be done when street improvement reaches that part of the city's territory. Whatever other criticism may be made of the section now under discussion it cannot be said that the language employed is otherwise than clear and explicit.

We are referred to a decision of the Kentucky Court of Appeals, Louisville v. Asphalt Co., 102 S. W. 806. In that case the city charter required the cost of the improvement to be taxed against the "surrounding squares," and the court held that a tract of land of 47 acres which lay on one side of the street improved was not a "square" within the meaning of the charter. The words "square" and "block" when used to designate a piece of land in a city are synonymous terms. We find the word "square" used chiefly in southern cities and the word "block" elsewhere, but they mean the same thing; they mean a piece of land defined by streets surrounding it. A statute of Kentucky (Ky. St. 1903, sec. 2833) defines the word "square," to be a subdivision bounded on all sides by principal streets. And the Kentucky Court in Caldwell v. Rupert, 73 Ky. 179, so defined the word as used in the charter of the city of Louisville. In State v. Natal, 42 La. Ann. 612, the Louisiana court said that the word "square" used in an ordinance of the city of New Orleans was synonymous with the word "block" used in another ordinance. See 7 Words and Phrases, p. 6618. Therefore in the Kentucky case, to which appellant refers, the court was considering the word "square," as defined by its statute and previous decisions, in reference to an

undefined tract of 47 acres. There is nothing in that case against our decisions in the Collier and other cases.

As to the Kansas case to which we are referred (McGrew v. Kansas City, 64 Kas. 61), we find nothing therein contrary to our decisions. The Kansas court was dealing with a Kansas statute which declared that where the lands are platted the cost of the improvement was to be assessed on all the lots and pieces of ground to the center of the block and on the unplatted land to the depth of three hundred feet. The court said: "According to the common understanding, a block is a portion of platted ground in a city, surrounded by streets, and the term is not ordinarily applied to a tract of unplatted land." And so the court held that the tract of unplatted land in that case should be assessed, not as a block, but, as the statute required, as unplatted land. But the section of the city charter with which we are concerned is not like the Kansas statute.

The rule laid down in the Collier case above mentioned and followed and approved in Fruin-Bambrick Construction Co. v. Shovel Co., 211 Mo. 524, and State ex rel. v. St. Louis, 211 Mo. 591, has, as stated in the brief of counsel for the city, been accepted as the correct rule and followed in other cases in establishing the boundaries of the benefit districts, and we ought not to depart from the rule even if the argument for appellant was more persuasive than it is.

II. Appellant contends that this section of the city charter, as we have interpreted it, is in violation of sections 20 and 30 of article 2 of the Missouri Constitution and the Fourteenth Amendment of the United States Constitution. The same contention was present in the cases above referred to. [Collier v. Paving Co., 180 Mo. 362; Fruin-Bambrick Const. Co. v. St. Louis Shovel Co., 211 Mo. 524.] And also in Meier v. City

of St. Louis, 180 Mo. 391. In those cases we interpreted the section of the charter as we interpret it in this case, and we held that it was not in conflict with either of the sections of the State Constitution mentioned or of the Fourteenth Amendment to the Federal Constitution. In the opinions in those cases we have fully expressed our views on that subject and have nothing more to say. We hold that the section of the charter in question is not repugnant to either the State or Federal Constitution.

III. According to the terms of this judgment it bears interest from its date until paid at the rate of eight per cent per annum. In that respect the judgment is in conflict with section 3707, Revised Statutes 1899, which provides that a judgment on a contract which bears more than six per cent interest shall bear interest at the same rate as that expressed in the contract, but all other judgments are to bear interest at six per cent.

According to the city charter, section 25 of article 6, a special taxbill, after the prescribed notice and after maturity, bears interest at eight per cent. But a special taxbill is not a contract; it is evidence of a burden that the taxing power of the city government has imposed on the property, to which the property owner has given no consent and as to which his consent is immaterial. Therefore, a judgment on a special taxbill is not to be treated as a judgment on a contract, and is not to bear interest at a greater rate than six per cent because the taxbill does. Respondent to sustain the judgment in this particular refers to Dickey v. Porter, 203 Mo. 1, l. c. 39, where this court affirmed a judgment on a Kansas City special taxbill which bore ten per cent interest. It appeared in that case that the charter of Kansas City not only allowed interest at ten per cent on the taxbill after maturity, but it provided also that the judgment on the taxbill should bear the same rate of interest. Counsel for ap-

pellant question the authority of a city under section 16 of article 9 of the Constitution to make a law authorizing a higher rate of interest on a judgment than that prescribed by the statute, in the face of the constitutional limitation, "but such charter shall always be in harmony with and subject to the Constitution and laws of the State." But no point of that kind was raised or discussed in that case. Whatever may be said as to the validity of the charter provision of Kansas City on that point, the case cited is no authority in support of the judgment now before us, because there is no such provision in the charter of the city of St. Louis. The following cases cited in the briefs of appellant's counsel sustain their view of the law on this point: St. Louis v. Allen, 53 Mo. 44, l. c. 57; St. Joseph v. Forsee, 110 Mo. App. 237, l. c. 243; Paving Co. v. Field, 134 Mo. App. 663, l. c. 668.

This is the only error we find in the record, but for this error the judgment must be reversed. It is therefore ordered that the judgment be reversed and the cause remanded to the circuit court with directions to enter judgment for the plaintiff as of date February 18, 1907, for the sum of $20,190.38, and in all respects as the judgment from which this appeal was taken, except that instead of eight per cent per annum the judgment is to bear interest at the rate of six per cent per annum from February 18, 1907, until satisfied. The appellant to recover costs in this court.

The foregoing opinion by *Valliant, J.*, in Division No. 1, is adopted as the opinion of the Court in Banc. *Gantt, Lamm* and *Kennish, JJ.*, concur; *Burgess, C. J.*, absent; *Woodson* and *Graves, JJ.*, dissent in dissenting opinion by *Woodson J.*

## DISSENTING OPINION.

WOODSON, J.—I dissent from the majority opinion in this cause for the reason that in my judgment

the charter provision in question only applies to tracts of land which are platted and laid out in lots and blocks, streets, avenues and alleys.

I am also of the opinion that if said charter provision was intended to apply to unplatted ground, then in my judgment it would be violative of both the State and Federal constitutions.

*Graves, J.,* concurs with the foregoing views.