# THE SCHNEIDER GRANITE COMPANY v. GAST REALTY AND INVESTMENT COMPANY and EMILY GAST, Appellants.

### Division Two, June 23, 1914.

1. **BENEFIT DISTRICT: Boundaries: Next Parallel or Converging Street: Charter of St. Louis: Constitutional Question.** Neither the State nor the Federal Constitution was violated by fixing the boundary of a benefit district in St. Louis, drawn in accordance with Art. 6, Sec. 14, of the city charter, midway between the street to be improved ·and the next parallel or converging street, although the latter street was over 900 feet distant from the street to be improved.

2. ———: ———: **"Lots."** The fact that a plat or survey accompanying a commissioners' report in partition has been recorded in the office of the recorder of deeds, does not render the divisions of the land, as marked on the plat, "lots" within the meaning of Sec. 14, Art. 6, charter of St. Louis, governing the fixing of the boundaries of benefit districts for street improvements, there being nothing to show that said plat was ever approved or accepted by the St. Louis board of public improvements.

3. ———: ———: **Inclusion of Other Lands: Who May Complain.** A property owner contesting a tax bill for street improvements in St. Louis, may not maintain a contention that other land has been improperly included in the benefit district, when its inclusion could only operate to lessen the proportion of the costs assessed against him.

4. ———: **Including City Property: Excessive Appropriation: Disposal of Excess.** The fact that the city has by ordinance appropriated, to cover the cost of street improvements to be assessed against the city's property in a benefit district, a larger sum than was necessary, does not entitle the other property owners in the district to a proportionate reduction to be made up out of the excess appropriated by the city.

5. ———: ———: ———: ———: **This Case.** Section 4 of an ordinance of the city of St. Louis providing for a street improvement and for the issuance of special tax bills in payment therefor, required that the cost of the work, except so much as was provided to be paid by the city by Sec. 5 of the same ordinance, should be assessed as a special tax upon all the property within a benefit district defined and bounded by Sec.

14, Art. 6, of the city charter. Section 5 of the ordinance set apart $17,168 to pay the city's proportion. The contractor's contract with the city was based upon said ordinance. When the boundaries of the benefit district were finally and correctly ascertained, the amount to be paid by the city as the proportion of the costs assessable against the city's land, was only $7994.78. *Held*, that the remainder of the total cost over $7994.78 must be assessed against the other property in the district, the mere appropriation of the larger sum by the city not operating to fix the city's proportionate part.

6. ———: **Tax Bills: Notice of Issuance.** The charter of St. Louis provided that tax bills may be collected with six per cent interest after thirty days' notice of their issuance, it being the duty of the city marshal, at the holder's request, to serve upon the party or parties named in the tax bill a notice of the issuance thereof. *Held*, that a notice which, although it failed to describe correctly and completely the land covered by the tax bill, was sufficient to apprise the owner that it was issued against his land, was compliance enough with the charter provision.

7. ———: ———: ———: **To Subsequent Purchasers of the Land.** The charter of St. Louis makes no provision for notifying subsequent purchasers of the issuance of tax bills, and therefore one who has become the record owner of property after the prior holder has been notified, has no right to notice, even though the tax bill has been corrected, and amended by the addition of her name as the owner of a portion of the land.

8. ———: ———: **Amendments.** Irregularities in the issuance of tax bills may be corrected by amendments made by the persons who originally issued them.

Appeal from St. Louis City Circuit Court.—*Hon. Daniel D. Fisher,* Judge.

Affirmed.

*Johnson, Rutledge & Lashly* for appellants.

(1) The benefit district was fixed automatically by the charter at the time of the passage of the ordinance, authorizing the improvement on July 24, 1907. Collier Estate v. Paving Co., 180 Mo. 362; Gilsonite v. Fair Assn., 231 Mo. 589; State ex rel. Co. v. St. Louis, 183 Mo. 230. (2) The northern boundary of the as-

sessment district west of Broadway should have been the southern line of Old Hornsby avenue, as the improvement did not extend north of that point. (3) The western portion of Old Hornsby avenue, which ran parallel to Broadway, and which was the next parallel street west of Broadway at the time of the passage of the ordinance, should have been used by the city in fixing the midway line west of Broadway at that point. (4) The midway line west of Broadway, parallel to the western portion of Old Hornsby avenue, which was actually fixed after the work was completed, was drawn parallel to Church road as it existed at the time the work was completed, although there was no public street at that place at the time the ordinance was passed; that is, Church road in July, 1907, did not extend that far north. (5) If the charter be so construed as to hold that Church road between Hornsby avenue and McLaran was the next parallel street west of Broadway, then the charter provision was unconstitutional and in violation of section 1 of article 14, of the amendments of the Constitution of the United States and in violation of sections 20 and 30 of Article 2 of the Constitution of Missouri. (6) The benefit district was erroneous and illegal and not in conformity to the Charter, in that it did not include the full depth of lots "H" and "I", the platted lots fronting on the east side of Broadway, owned by the city. State ex rel. v. St. Louis, 183 Mo. 230. (7) Ordinance 23,137, which levied the special tax, only levied as a special tax against the property in the benefit district, the difference between the total cost of the improvements and $17,168, the city's portion of the cost as estimated by the president of the board of public improvements, and appropriated by the ordinance. In figuring the tax bills there was assessed, however, the difference between the total cost and $7974; in other words, the tax bills issued against the property in the benefit district, exceeded by $10,000

the amount of the tax levied as prescribed by the ordinance. Secs. 15, 17, 28, art. 6, Charter, St. Louis. (8) When the plaintiff contracted with the city, it contracted on the basis of ordinance 23,137, which provided that only the difference between the total cost and $17,168 should be levied as a special tax against the property in the benefit district. The contract followed the ordinance and provided that the tax bills for the difference between the total cost and $17,168 should be assessed against the property in the district. The plaintiff knew what it was contracting for and knew then what was to be paid by the district. The tax bills have been issued for $10,000 in excess of the amount called for by the plaintiff's contract, and the whole issue, including the tax bill in suit is, therefore, void. Poplar Bluff v. Bacon, 144 Mo. App. 476. (9) Sections 15, 27 and 28, of article 6, of the charter, provides that there should be endorsed on the ordinance by the president of the board of public improvements, an estimate of the total cost of the work, and also an estimate of the city's share of the work, and of the fund from which it is to be appropriated. The city's proportion of the cost of this work was estimated at $17,168, and the share against the property of the benefit district was estimated at $23,824, by deducting the city's share from the total cost. When the work was finished and the tax bills were issued, and the benefit district finally laid out, the city was assessed with only $7974, and the property in the benefit district was assessed $34,296. Such a discrepancy between the estimate and the cost vitiates the estimate. It was no estimate at all within the meaning of the charter, and the whole proceeding is void. Boonville ex rel. v. Rodgers, 125 Mo. App. 149; Kirksville v. Coleman, 103 Mo. App. 220. (10) The ordinance is in conflict with the charter, and, therefore, void. (11) The original tax bill sued on in this case is void, for the reason that the description of the property contained in the

original tax bill was so vague and uncertain as to make the bill a nullity and it could not be cured by an amendment. Adkins v. Quest, 79 Mo. App. 76; 25 Am. & Eng. Ency. Law, 1223; Jefferson City v. Whipple, 71 Mo. 520; Winningham v. Trueblood, 149 Mo. 572; Jones v. Carter, 56 Mo. 403; Clemens v. Rannells, 34 Mo. 579; Bell v. Sanders, 207 Mo. 281. (12) Under the provisions of section 25 of article 6, of the charter, special tax bills for street improvements are not due until thirty days after notice. The only notice given related to the insufficient and void original tax bill. No notice was given of the attempted amendment or of the amended tax bill and therefore the suits are brought prematurely.

*Rodgers & Koerner* and *Hickman P. Rodgers* for respondent.

(1) To construe the charter to mean that Church road was the next parallel street to the street improved, even though in the course of time other streets may be opened between them, is not contrary to the Constitution of the State of Missouri, or the Constitution of the United States. Granite Bit. Pav. Co. v. Fleming, 158 S. W. 4; Roofing Co. v. Fair Assn., 231 Mo. 589; Const. Co. v. Shovel Co., 211 Mo. 524; State ex rel. v. St. Louis, 211 Mo. 591; Collier Est. v. Paving Co., 180 Mo. 362. (2) The Street Commissioner's plat prepared prior to the adoption of the improvement ordinance was for his convenience, and could not fix the boundaries of the benefit district. Granite Bit. Pav. Co. v. Fleming, 158 S. W. 4. The benefit district is automatically established by the charter, after the work is completed. Charter, St. Louis, art. 6, sec. 14. The only changes made in the physical situation between the time of the passage of the improvement ordinance and the issuance of the tax bills were made by appellants and for their benefit; and of these

appellants should not be heard to complain. (3) Making allotments in partition and recording the allotment plat does not divide a tract of land into lots within the meaning of the charter provision requiring the assessment to their full depth of all lots fronting on the street improved. Collier Est. v. Pav. Co., 180 Mo. 385. (4) The appropriation in advance of the work of a greater sum than necessary to pay the city's portion of the cost of an improvement, does not bind the city to pay more than its actual portion when ascertained, nor entitle property holders to an application of such excess to their portion of such cost. Perkinson v. Weber, 157 S. W. 961. (5) The courts will correct irregularities in amounts of special tax bills upon proper pleadings and proof, but will not declare same void on that ground. Defendants having tried the cases on the theory that the bills are void because excessive, are not now entitled to a reduction in amount even though the facts should warrant same. Neil v. Ridge, 220 Mo. 233. (6) The only notice to which appellants were entitled was that "of the issuance" of the tax bills. Charter, art. 6, sec. 25. The notices herein were sufficient. 37 Cyc. 1019. (7) The defects, if any, in the original tax bills were mere irregularities in no way affecting their validity. Whatever may have been the effect of the tax bills in their original form, whether void or merely imperfect, they were subject to amendment. State ex rel. v. St. Louis, 183 Mo. 230; Riley v. Cranor, 51 Mo. 541; Vieths v. Planet Co., 64 Mo. App. 207; Galbreath v. Newton, 45 Mo. App. 312.

WILLIAMS, C.—This is a suit upon a special tax bill in the sum of $14,522.65 and interest, issued by the city of St. Louis to the plaintiff contractor and against the property of defendants, as in part payment for the improvement of that portion of Broadway street lying between a line about 285 feet south of Pelham avenue and Hornsby avenue in said city. Trial was

had in the circuit court of the city of St. Louis, resulting in a judgment for plaintiff for the full amount with interest. Defendants have perfected an appeal to this court. By the St. Louis charter, it is provided that special assessments for street improvement shall be levied, one-fourth against the land fronting upon or adjoining the improvement and three-fourths proportionately against all the land lying within the benefit district to be fixed as provided by said charter. Said benefit district is established as follows:

"A line shall be drawn midway between the street to be improved and the next parallel or converging street on each side of the street to be improved, which line shall be the boundary of the district, except as hereinafter provided, namely: If the property adjoining the street to be improved is divided into lots, the district line shall be so drawn as to include the entire depth of all lots fronting on the street to be improved. If the line drawn midway as above described would divide any lot lengthwise or approximately lengthwise, and the average distance from the midway line so drawn to the nearer boundary line of the lot is less than twenty-five feet, the district line shall in such case diverge to and follow the said nearer boundary line. If there is no parallel or converging street on either side of the street to be improved, the district lines shall be drawn three hundred feet from and parallel to the street to be improved; but if there be a parallel or converging street on one side of the street to be improved to fix and locate the district line, then the district line on the other side shall be drawn parallel to the street to be improved and at the average distance of the opposite district line so fixed and located. Provided that if any property in a district established as herein provided is not liable to special assessment, the city shall pay the proportion of cost of the improvement which would have been assessed against such property. All of the property in

the lots, blocks or tracts · of land lying between the streets to be improved and the district lines established as above specified, shall constitute the district aforesaid. . . . The word 'lot' as used in this section, shall be held to mean the lots as shown by recorded plats of additions or sub-divisions, but if there be no such recorded plat, or if the owners of property have disregarded the lines of lots as platted, and have treated two or more lots or fractions thereof as one lot, then the whole parcel of ground, or lots so treated as one, shall be regarded as a lot for the purposes hereof.''

Charter of the City of St. Louis, art. 6, sec. 14.

The property involved in the present tax bill is upon the west side of the improved street, having a frontage thereon of 1083.88 feet and extending westward to a depth varying from 327 feet to approximately 493 feet. The nearest public street west of the improved street, and also west of the land involved in this tax bill, is Church road, which is approximately 986 feet west of Broadway at this place.

Appellants make no claim that the work of said improvement was not properly done as provided by the contract and specifications, but seek to defeat a recovery by reason of certain alleged irregularities in the fixing of the boundaries of the benefit district; in the issuance of the tax bill and the giving notice of its issuance. The different defenses pleaded may be briefly stated as follows:

1. That the assessment district fixed by said city was illegal and improper and not in conformity with the provisions of the city charter in this:

(a) A portion of the western boundary of said benefit district was placed half-way between Broadway and Church road whereas Church road was not a parallel or converging street to Broadway within the meaning of said charter. That in time this property will be intersected with other streets parallel and nearer

Broadway; that if section 14 of article 6, of the charter
of the city of St. Louis, when correctly construed, au-
thorizes the fixing of the western line of said district at
the place it was in fact located in the instant case then
said charter provision is illegal and void because of
being in violation of section 1, article 14 of the amend-
ments to the Constitution of the United States and
sections 20 and 30 of article 2 of the Constitution
of Missouri; that said portion of the west boundary
of said district should have been located ''at a distance
west of Broadway equal to the average distance of the
district line on the east side of the improved street''
as provided by the charter when there is no parallel
or converging street on one side of the improved
street; that if the western district line had been drawn
a distance from Broadway equal to the average dis-
tance of the opposite boundary line it would have been
much closer to Broadway and would have omitted
from the assessment district a large portion of the
property included in said tax bill.

(b)   That the eastern boundary of the district
should have been extended so as to have taken in the
entire depth of lots ''H'' and ''I'' of the subdivisions
of Gimblin's estate fronting upon the east side of the
improved street, because the same are lots within the
meaning of the charter. (Note: This would have en-
larged the benefit district and decreased the amount
of defendant's tax.)

(c)   At the time of the passage of the ordinance
authorizing the improvement, a street then known as
Hornsby avenue ran about 150 feet parallel with the
northern end of the improved street. That before the
improvement was finished this short parallel street
was vacated and another parallel street about 155 feet
farther west was opened by extending Church road
northward and that the western boundary line of the
district at this place was fixed half way between Broad-

259 Mo.—11

way and the new extension of Church road instead of half way between Broadway and Hornsby avenue as it existed at the time the ordinance was passed. (Note. This had the effect of taking more land into the assessment district but land *other than that* involved in the present tax bill.)

2.   That the ordinance providing for the improvement and the issuance of special tax bills in payment therefor was in part as follows:

"The total cost of the foregoing work and all proper connections and intersections required (except so much thereof as the railway company having tracks on said street is by law obligated to pay, and except, further, so much thereof as is provided to be paid by the city of St. Louis by section 5 of this ordinance) shall be ascertained and be levied and assessed as a special tax upon all the property within a district defined and bounded by section 14 of article 6 of the charter of the city of St. Louis.

"Section 5.   Whereas, in the district aforesaid there is located St. Louis water works property of the city of St. Louis which is not liable to special assessment, and, whereas, the proportion of cost of the aforesaid improvement which would have been assessed against said property of the city were it not exempt from the assessment, amounts to $17,168.   There is hereby appropriated and set apart out of real estate account for city's proportion of cost against property of the city for reconstructing and improving streets, alleys or sidewalks said sum of $17,168 to pay for the city proportion of said cost."

That the amount finally paid by the city on property included in the district exempt from special assessment was $7947.78, instead of $17,168, the amount appropriated, and that by reason thereof the remainder of the property in the assessment district had to pay approximately $10,000 more in special tax than contemplated and provided by said ordinance and that by rea-

son thereof said tax bills including the one in suit were
rendered illegal and void.

3. That the contract which plaintiff entered into
with the city for the performance of said work pursuant
to the terms of said ordinance provided that the "prop-
erty in the benefit district exclusive of the property
belonging to the city, should only be charged with the
difference between the total cost of said improvement,"
to-wit, $42,291.52 and the sum to be paid by the city
authorities, to-wit, $17,168, but that the city authorities
failed to deduct said sum of $17,168, before assessing
the assessible property in said district, and that by
reason of said ordinance and contract plaintiff is
estopped to claim that special tax bills could be issued
by the city for more than the sum of $42,291.52 less said
$17,168, and that by reason of such error the said tax
bill is illegal and void.

4. That said tax bill is void because it did not
describe with sufficient certainty the property against
which it purported to be issued; and that said tax bill
was never amended in any manner provided by law.

5. That no notice of the issuance of any special
tax bill against the property referred to in the amended
petition was ever given to defendants.

There is little, if any, dispute as to the controlling
facts. Such additional facts as shall become necessary
to an understanding of the legal questions involved will
be stated in connection with the discussion of the re-
spective points.

I. It is contended that that portion of the western
boundary of the benefit district affecting the property
involved in the present tax bill was erro-
neously fixed one-half way between
Broadway and Church road and further
that if the charter of St. Louis be con-
strued to authorize the fixing of the
boundary line in such manner then said charter provi-

*Boundaries of Benefit District: Charter of St. Louis.*

sion is in conflict with the Fourteenth Amendment to the Constitution of the United States and with sections 20 and 30 of article 2 of the Constitution of Missouri.

The undisputed facts show that Church road, which is approximately 900 feet distant, is the nearest parallel street to that portion of the improved street upon which the land involved in the present tax bill fronts.

The point here raised has been fully discussed and directly passed upon by this court in a number of decisions. No present reason appears why the subject should again be discussed at length, but for the purpose of the present case, it is sufficient to say that the rule has become firmly established by former opinions of this court to the effect that the charter of St. Louis does provide for the fixing of the boundary line of the benefit district as the same was fixed at the place above mentioned in the case at bar, and that such charter provision does not conflict with any of the above-mentioned constitutional provisions. [Granite Bituminous Paving Co. v. Fleming, 251 Mo. 210; Gilsonite Co. v. St. Louis Fair Assn., 231 Mo. 589; Fruin-Bambrick Construction Co. v. St. Louis Shovel Co., 211 Mo. 524.]

II.    It is further contended that the benefit district should have been extended so as to have taken in (to

—————:
—————:
"Lots."

their full depth) certain parcels of ground owned by the city and occupied by its water works plant; said property fronts upon the improved street and is described as lots "I" and "H" of H. Gimblin's estate in partition. Each of said parcels of ground contains about thirteen acres of land and has a depth of about 1400 feet extending eastward from the improved street. From the evidence it appears that there was no parallel or converging street east of that portion of the improved street upon which this property fronts. The district line at this place was drawn parallel with and a distance of 240

feet from the improved street; said 240 feet being the average distance of the district line on the opposite side of the street. If the two above-mentioned tracts of land are "lots" within the meaning of the city charter, then the district line should have been extended so as to take in the full depth thereof. This would have greatly increased the area of the benefit district and therefore have greatly reduced the amount of tax assessed against the land involved in the present tax bill. If, on the other hand, said tracts of land are not "lots" within the meaning of the charter, then the district line was properly located. The tracts of land marked "I" and "H" were formerly a part of the H. Gimblin's estate or farm. After said Gimblin's death his estate, consisting of several acres, was partitioned. Commissioners in partition divided the estate into ten separate tracts of land, designating the separate tracts upon a survey by letters respectively from "A" to "K," both inclusive. These separate divisions varied in size, ranging from about four acres to about forty-eight acres and the separate parcels were allotted to the respective parties in partition. A survey was made of the division of the estate and the survey or plat accompanying the commissioner's report in partition was recorded in the office of the recorder of deeds of St. Louis county. There is nothing to show that said plat was ever approved or accepted by the board of public improvements of the city of St. Louis. We think it clearly apparent that said tracts of ground are not "lots" within the meaning of the charter, and that therefore the district line at that place was properly located. In the case of The Collier Estate v. Western Paving & Supply Company, 180 Mo. 362, l. c. 385, where a situation similar to the one in the case at bar was involved, the court in Banc, speaking through Gantt, J., said: "As to the claim that this tract was divided into lots and the plat recorded, because in the partition suit portions of it were allotted

in the survey and these allotments recorded with the commissioner's deed, we think it is untenable. There is no pretense that such allotment plat was approved by the board of public improvements and recorded in the plat books in the recorder's office."

III.    It is urged that the tax bill is void by reason of the location or fixing of that portion of the western boundary line which extends southward a distance of approximately 240 feet from the northwest corner of the benefit district. At the time the ordinance authorizing the improvement was passed, Hornsby avenue ran parallel to Broadway at this point. While the work was in progress and before the work was completed, Hornsby avenue was vacated and Church road was extended northward so that at the close of the work this extension of Church road was the next parallel street along this portion of the improved street. This extension of Church road was approximately 150 feet farther west of Broadway than was Hornsby avenue. The district line at this place was placed one-half way between Broadway and this extended parallel portion of Church road, thereby including in the benefit district a strip of ground about 70 by 240 that would not have been included in the benefit district had the district line at this point been fixed half way between Broadway and the next parallel street existing at the time the ordinance was passed. This strip of ground thus taken into the benefit district was no part of the land against which the present tax bill was issued. This being true, defendant, so far as his property is involved in the present suit, was benefitted and not harmed by reason of the boundary line being fixed where it was. Three-fourths of the cost of the improvement is assessed proportionately against the area of all the land in the benefit district. The larger this benefit district the smaller the assessment per square

*[margin note:]* Who May Complain That Land is Wrongly Included.

foot.   The fixing of the district line as it was fixed
had the effect of bringing more land into the district,
therefore the land in the present tax bill was assessed
for a less amount than if the line had been fixed at
the place contended for by appellants.   Under such
circumstances, appellants should not be permitted to
urge such irregularity against the validity of the pres-
ent tax bill, but that question should be left for deter-
mination in the suit involving the validity of the tax
bill embracing that particular tract.   The suit involv-
ing the validity of the tax bill embracing that particular
tract is now under submission in this division of the
court and that point will be discussed therein.

IV.   The ordinance authorizing the improvement
made provision for an appropriation of $17,168 out of
the real estate fund of said city, with
Appropriation which to pay the city's proportion of the
by City.         cost of said improvement.   The charter
provided "that if any property in a district established
as herein provided is not liable to special assessment,
the city shall pay the proportion of cost of the improve-
ment which would have been assessed against such
property."   In the case at bar the amount to be paid by
the city could only be determined by the amount of the
city's property which was properly included within the
benefit district.   The district boundaries were fixed
automatically by the charter.   An ordinance could not
add to or take from the benefit district.   [Collier Estate
v. Western Paving & Supply Company, supra, l. c.
375.]

The purpose of the ordinance in the respect here
discussed was to make an appropriation out of which
the city's proportionate part could be paid.   The fact
that the ordinance appropriated $17,168 with which
to pay its proportion could in no manner obligate the
city to pay that amount unless the city's legal share
in fact equalled that amount.   When the work was com-

pleted and the city authorities were ready to issue the tax bills it was ascertained that the city's correct proportion was $7994.78. The appropriation of $17,-168 was made by the municipal assembly, evidently under the mistaken idea that the benefit district would extend to the full depth of tracts "I" and "H" owned by the city. The identical point here raised was passed upon by this court in the case of Perkinson v. Weber, 251 Mo. 186. In that case, BROWN, P. J., speaking for the court, said: "The appropriation mentioned turned out to be more than a thousand dollars larger than was necessary to cover the city's part of improving Twentieth street, but that did not harm defendants in any way. . . . Because the municipal assembly acted with abundant caution in appropriating a larger sum than was necessary would constitute no warrant for spending the surplus of that appropriation in paying special taxes on property of defendants or other private persons. All of the costs . . . which were legally chargeable against the city of St. Louis were paid out of the appropriation, and the contention of defendants that the remainder of said appropriation should have been applied on said improvements must be disallowed."

It is further insisted by appellants, however, that the ordinance in appropriating a certain amount with which to pay the city's portion thereby limited the amount for which special tax bills could be issued against private property in the district to the difference between the total costs and the amount so appropriated. We are unable to agree with this construction of the ordinance. Section 4 of the ordinance in providing for the issuing of special tax bills to pay for the total cost of the improvement (less the amount to be paid by the street railway company and the amount to be paid by the city by section 5 of the ordinance) expressly states that the benefit district contemplated by the ordinance is the district as fixed by

section 14, article 6 of the charter. And by providing for deducting from the total cost the amount to be paid by the city as provided by section 5 of the ordinance (said section 5 not fixing the city's liability but only appropriating to pay its proportion as fixed by the district under the charter) said ordinance should not be construed to mean that the legal amount assessable against the remainder of the property in the benefit district should be less than its legal share. It is true that it was necessary that the ordinance make an appropriation for paying the city's part but this provision can not fix the city's proportionate part. It can only provide the funds out of which the city's proportionate part (otherwise fixed) can be paid. What is said in this paragraph as to the construction to be placed upon said ordinance will also apply to the construction to be placed upon the contract between the city and the contractor which contract was based upon the ordinance.

V. The charter provides that tax bills "may be collected of the owner of the land and in the name of and by the contractor, as any other claim in any court of competent jurisdiction, with interest at the rate of six per cent per annum *after thirty days notice of its issuance* as hereinafter provided. . . . It shall be the duty of the city marshal, at the request of the holder or owner of any tax bill issued under this charter, to serve upon the party or parties named in such tax bill a notice of the issuance thereof," etc.

**Tax Bills: Notice of Issuance.**

Pursuant to the above provision for giving notice, and in due time, the contractor caused to be served upon the defendant named in the tax bill the following notice:

"SPECIAL TAX BILL NOTICE.

"Gast Realty & Investment Co.—Owner.

"You are hereby notified that special tax bill No. 17961 for $14,522.65, date Feb. 8, 1909, has been issued to Schneider Granite Co., Contractors, under ordinance No. 23137, contract No. 8105, for work done on Broadway between a line about 285 feet south of Pelham avenue and Hornsby avenue, and chargeable against property described in said special tax bill as follows:

"Lot No. — in city block No. Vol. 1, pa. 64, said ground having an aggregate front of 1085.71 feet, by
                327.18                        1083.88
a depth of 418.92 feet, bounded north by Hornsby avenue, east by Broadway, south by alley et al. and west by Luedinghaus, Jr., et al.

"This bill is payable as provided by Section 25, Article VI, of the City Charter, and the Lafayette Bank, Broadway and Merchant St., has been designated as the place of payment thereof, where payment of the bill in full may be made without interest within thirty days after service of this notice; otherwise, in accordance with said section and article.

"Payment thereof is now demanded.

"SCHNEIDER GRANITE Co., Contractors.

"By B."

It is contended that the above notice is insufficient by reason of the fact that the property is not correctly and completely described. It is true that the property is not fully described. However, the purpose of the notice is to inform the person named in the tax bill of the "issuance thereof," so that he may pay the same without interest at any time within thirty days after receiving said notice. The description given says the property is bounded on the north by Hornsby avenue and on the east by Broadway. The same could not be said of any other piece of property in the city.

However, the charter does not provide that the notice shall contain a description of the property. The description given in the present notice was sufficient to apprise the owner that it was his land against which the tax bill was issued. The notice gave the date of the tax bill, its amount, and the number of the ordinance and contract authorizing the work and also designated the street improvement for which the tax bill was issued and stated at what bank the tax bill was payable. We cannot conceive how appellant could have been misled in any way or how its rights could have been impaired by reason of any information which the notice failed to impart. It gave sufficient information of the "issuance" of the tax bill and was a sufficient compliance with the charter provision as to such notice.

After the above notice was given, defendant Emily Gast became the record owner of a small portion of the property against which this tax bill **To Subsequent Purchasers of Land.** was issued. And later the tax bill was amended by giving an accurate description of the property by metes and bounds and by adding the name of Emily Gast as owner. No notice was ever given said Emily Gast. But the charter makes no provision for notifying subsequent purchasers of the property of the issuance of the tax bill but only provides for notice of its issuance to be given the person named in the tax bill at the time the notice is given.

VI. The tax bill was issued February 8, 1909, and the above notice of its issuance was served upon appellant corporation March 3, 1909; on December 17, 1909, the tax bill was amended **Amending Tax Bill.** by correctly describing the property by metes and bounds and by adding the name of appellant Emily Gast, who had become the record owner of a portion of the land after the issuance of the tax bill. This suit was instituted afterwards and is based upon

the amended tax bill. This amendment was made and indorsed by the same city authorities that issued the original tax bill.

It is well settled in this State that irregularities occurring in the issuance of tax bills may be corrected by amendments thereto made by the same persons who originally issued the same. [Morley v. Weakley, 86 Mo. 451; Stadler v. Roth, 59 Mo. 400; Vieths v. The Planet Property & Financial Company, 64 Mo. App. 207.] Said amendment was not only permissible under the authorities but it was a very proper and necessary step for the purposes of the tax lien and the regularity of a possible sale of the land under a judgment rendered thereon.

The judgment is affirmed. *Roy, C.,* concurs.

PER CURIAM.—The foregoing opinion of WILLIAMS, C., is adopted as the opinion of the court. All the judges concur.

*Johnson, Rutledge & Lashly* for appellant.

*Rodgers & Koerner* and *Hickman P. Rodgers* for respondent.